1   Cliff Palefsky, Esq. (State Bar #77683)
    Keith Ehrman, Esq. (State Bar #106985)
2   McGuinn, Hillsman & Palefsky
    535 Pacific Avenue
3   San Francisco, California  94133
    Telephone: (415) 421-9292
4   Facsimile:   (415) 403-0202
    cp@mhpsf.com
5   kaemhp@aol.com

6

7   Michael Rubin (State Bar #80618)
    Altshuler Berzon LLP
8   177 Post St., Suite 300
    San Francisco, CA  94108
9   Telephone:  (415) 421-7151
    Facsimile:  (415) 362-8064
10  mrubin@altber.com

11  Attorneys for Plaintiff
    TAYLER BAYER
12

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                     SAN FRANCISCO DIVISION

17                                    CASE NO. CV 13 4487

18  TAYLER BAYER,                     )
                                      )
19              Plaintiff,            )   COMPLAINT FOR VIOLATION OF
                                      )   AMERICANS WITH DISABILITIES
20  vs.                               )   ACT, 42 U.S.C. §12203(b)
                                      )
21  NEIMAN MARCUS GROUP, INC.         )      JURY TRIAL DEMANDED
                                      )
22                                    )
                                      )
23              Defendant.            )
    _____ )

24

25

26  _____

27              BAYER v. NEIMAN MARCUS GROUP, INC.

28       COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff TAYLER BAYER complains and alleges as follows:

## INTRODUCTION

1.  Plaintiff TAYLER BAYER ("Bayer"), a former employee of defendant NEIMAN MARCUS GROUP, INC. ("Neiman Marcus"), brings this action under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., on the ground that Neiman Marcus unlawfully attempted to, and did in fact, "coerce, intimidate or threaten" Bayer in the exercise and enjoyment of his ADA-protected rights in violation of 42 U.S.C. §12203(b).

2.  Bayer developed emphysema, an ADA-covered disability/medical condition, while employed by Neiman Marcus at its downtown San Francisco retail store.  Bayer promptly requested Neiman Marcus to reasonably accommodate his disability by modifying his work hours.  After Neiman Marcus refused to provide accommodation, Bayer informed Neiman Marcus that he had consulted with an attorney regarding his legal rights, and Bayer filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging that Neiman Marcus had violated the ADA.  Bayer intended to pursue his claim in federal court after exhausting his EEOC administrative remedy.  Neiman Marcus responded by informing Bayer that it was imposing on him a mandatory arbitration agreement which, by its terms, prevented him from pursuing his ADA claim in court and stripped him of many federal substantive and procedural rights protected by the ADA.  Neiman Marcus's unilateral attempt to impose this rights-stripping arbitration agreement independently violated the ADA, which prohibits any covered employer, like defendant Neiman Marcus, from attempting to "coerce, intimidate or threaten" an employee in the exercise or enjoyment of any right granted or protected by the ADA.  42 U.S.C. §12203(b).  Among the federal rights granted or

---

*BAYER v. NEIMAN MARCUS GROUP, INC.*

COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

protected by the ADA that Neiman Marcus unlawfully coerced, intimidated, or threatened Bayer from exercising or enjoying were:  his right to bring an ADA claim in a federal judicial forum governed by the federal rules of civil procedure and discovery; his right to have a jury trial in pursuing that claim; his right to full access to the EEOC administrative process; his right to the applicable federal statute of limitations for ADA claims; his right to bring a class action and/or to join his claim with the claims of other employees; his right to fully adjudicate his claim in a fair, neutral and adequate forum; and his right to have the ADA enforced as written.  By this action, Bayer seeks damages, declaratory and injunctive relief, and statutory attorneys' fees under 42 U.S.C §12205.

## JURISDICTION

3.  This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., as amended.  This Court has subject matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States.

## VENUE

4.   Venue is proper in the Northern District of California because a substantial part of the events giving rise to plaintiff's claims occurred within this district, and because defendant has an office and conducts business within this district.

## PARTIES

5.  At all relevant times, defendant Neiman Marcus was a corporation organized in the United States, authorized to do business in, and doing business in, the State of California.  Neiman Marcus owns and operates a chain of upscale specialty retail department stores.  Although Neiman Marcus's corporate headquarters are in Texas,

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1    Neiman Marcus owns and operates a department store and maintains an office in the

2    City and County of San Francisco.

3         6.  At all relevant times, plaintiff Bayer was an employee of Neiman Marcus in its

4    San Francisco retail store.  He began working for defendant Neiman Marcus as a full-

5    time Cosmetic Sales Associate on March 29, 2006.  Bayer's employment with Neiman

6    Marcus was terminated in January 2009.  Bayer is currently a resident of Atlanta,

7    Georgia.

8    <u>**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**</u>

9         7.  Throughout the period of Bayer's employment for Neiman Marcus, Neiman

10   Marcus treated its employees who worked at least 30 hours per week as "full time"

11   employees who were thereby entitled to receive benefits, including medical and dental

12   insurance, health insurance, and participation in its 401(k) plan.

13        8.  Before March 2007, Bayer was consistently scheduled to work, and did

14   work, five six-hour shifts per week at Neiman Marcus.  Bayer was thus treated as a

15   "full-time" employee by Neiman Marcus and was qualified to receive, and did receive,

16   the benefits available to its full-time employees.

17        9.  In March 2007, Bayer was placed on medical leave by his physician due to

18   respiratory problems.  In April 2007, Bayer was diagnosed as suffering from

19   emphysema, a chronic respiratory condition.  Bayer remained on medical leave until

20   June 1, 2007.

21        10.  Bayer's physician authorized Bayer to return to work on June 1, 2007,

22   subject to certain restrictions required by his physical condition.  Specifically, Bayer's

23   physician limited Bayer to working no more than four days per week, although Bayer

24   was allowed by his physician to work a full eight-hour shift on each of those four days.

25

26   _____

27              *BAYER v. NEIMAN MARCUS GROUP, INC.*

28        COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

11.   Bayer promptly informed Neiman Marcus that he was able to return to work as of June 1, 2007, but that his medical condition required that he work no more than four days per week.  On or about June 8, 2007, consistent with his physician's instructions, Bayer requested that Neiman Marcus modify his full-time work schedule by allowing him to work four eight-hour shifts per week, rather than his previous five six-hour shifts.

12.   Bayer's chronic respiratory condition was a physical disability within the meaning of the ADA, because it caused Bayer to be substantially limited in numerous major life activities, including breathing; because he had a record of such limitations; and because he was regarded by his employer Neiman Marcus as having such limitations.  However, on or about June 8, 2007, Neiman Marcus refused to accommodate Bayer's disability/medical condition and Neiman Marcus would not modify Bayer's work schedule in the manner Bayer had requested or in any other manner that would reasonably accommodate him.  Neiman Marcus refused to allow Bayer to work four eight-hour shifts per week and insisted that Bayer work no more than six hours per day on any day he worked, even though Neiman Marcus knew that Bayer could not work more than four days per week and that Bayer would lose all benefits of being a full-time Neiman Marcus employee if he did not work at least 30 hours per week.

13.   Neiman Marcus's refusal to accommodate Bayer meant that Bayer could only work a maximum of 24 hours per week.  Consequently, Bayer lost his status as a full-time employee and lost all Neiman Marcus benefits, including his medical and dental insurance, life insurance, and his eligibility to continue participating in the defendant's 401(k) plan.  Defendant was fully aware Bayer would lose these benefits if

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

it refused to accommodate Bayer's medical condition by adjusting his shift hours, but it nonetheless refused to provide Bayer any accommodation.

14. In June 2007, Bayer informed Neiman Marcus that he had consulted with an attorney regarding his legal rights, and that Neiman Marcus was obligated to provide him with reasonable accommodation for his medical condition. Neiman Marcus refused to reasonably accommodate Bayer, even after it became clear that Bayer intended to take legal action to enforce his rights.

15. On June 20, 2007, Bayer filed an administrative complaint with the EEOC, alleging that Neiman Marcus had discriminated against him on the basis of his disability/medical condition; that Neiman Marcus had failed to accommodate his disability/medical condition; and that Neiman Marcus had retaliated against him, all in violation of the ADA ("EEOC Charge #1"). A true and correct copy of EEOC Charge #1 is attached hereto as **Exhibit A**. Bayer intended to file a civil lawsuit in federal court against Neiman Marcus for violation of the ADA once he received a right to sue letter from the EEOC and had exhausted his required administrative remedies.

16. Immediately after Bayer filed his EEOC Charge #1, Bayer received from Neiman Marcus a new mandatory arbitration agreement entitled "The Neiman Marcus Group, Inc. Mandatory Arbitration Agreement" ("the Arbitration Agreement"). A true and correct copy of the Arbitration Agreement is attached hereto as **Exhibit B**. Neiman Marcus informed Bayer that he was required to sign the Arbitration Agreement's acknowledgment form and that all terms of the Arbitration Agreement were binding, non-negotiable, and not optional. Bayer's supervisors told him that he would be terminated if he did not sign the acknowledgement form and agree to the new policy by July 15, 2007. Neiman Marcus also told Bayer that, whether or not he signed the

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

acknowledgement form, he would be deemed to have accepted all of the terms and conditions set forth in the Arbitration Agreement if he continued to work for Neiman Marcus after July 15, 2007.

17.  The ADA guarantees every covered employee who alleges discrimination on the basis of disability the same rights, remedies, and procedures as exist under the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).  42 U.S.C. §12117(a).  Neiman Marcus, by requiring Bayer to be bound by its mandatory Arbitration Agreement if he continued working for it, intended to strip Bayer of many crucial ADA-protected rights, both substantive and procedural, including each of the following:

1) The right to bring a civil action against Neiman Marcus in a federal judicial forum for its violation of the ADA.  *See* 42 U.S.C. §2000d-5(f)(1), (3).  As part of this right to pursue relief in a federal judicial forum, Bayer had the right to have his action governed by the Federal Rules of Civil Procedure (including Rule 23's provision allowing class actions) and the right to discovery under these rules.  The Arbitration Agreement eliminated these rights by limiting Bayer to an arbitration forum and by providing specific rules and procedures (including very limited discovery) that Bayer was compelled to accept.

2) The right to a jury trial.  An employee who alleges violations of the ADA has the right to a jury trial, pursuant to 42 U.S.C. §1981a(c) and 42 U.S.C. §12117(a).  The Arbitration Agreement eliminated Bayer's right to a jury.

3) The right to the applicable statute of limitations for ADA claims.  Under federal law, the time period for bringing an ADA action in court does not begin until the EEOC has finished its review and issued a right to sue letter – a process that can, and often does, take several years.  However, the Arbitration Agreement included a

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1   shortened statute of limitations provision that eliminated the ability of many employees

2   to bring a claim against Neiman Marcus.  Under the Arbitration Agreement, an

3   employee was required to bring an action against Neiman Marcus within one year from

4   the date the employee's employment ceased or be forever precluded from bringing

5   such an action.  The Arbitration Agreement simultaneously forbids employees from

6   bringing an action against Neiman Marcus until all administrative remedies have been

7   exhausted, which includes the remedy of seeking and obtaining a right to sue letter

8   from the EEOC.  Thus, the Arbitration Agreement would prevent a Neiman Marcus

9   employee like Bayer from bringing a claim against Neiman Marcus if the employee

10  were still waiting to receive the EEOC right to sue letter when Neiman Marcus's one

11  year "post termination" time limit expired.  In addition, many former employees with

12  post-employment retaliation claims would usually be unable to pursue a claim against

13  Neiman Marcus in light of the Arbitration Agreement's limitations period.

14          4) The right to have full access to the EEOC administrative process.  An

15  employee who alleges violations of the ADA must follow the same administrative

16  remedies and procedures that govern actions under the Civil Rights Act, as set forth in

17  42 U.S.C. § 2000e-5.  Thus, an employee with an ADA claim has the opportunity to let

18  the EEOC fully investigate his claim before bringing an action in court, including giving

19  the EEOC an opportunity to resolve the dispute through conciliation efforts.  Because of

20  the shortened statute of limitations imposed by the Arbitration Agreement, Bayer and

21  other similarly situated employees could be forced to give up their right to have the

22  EEOC fully investigate their claims and undertake conciliation efforts.  That is, In order

23  to obtain an EEOC right to sue letter within the Arbitration Agreement's one-year time

24  period for filing any claim against Neiman Marcus, Bayer and other similarly situated

25

26  _____

27          *BAYER v. NEIMAN MARCUS GROUP, INC.*

28     COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

employees could be compelled to abandon their EEOC claims before the EEOC process was finished.

   5)  The federal law right to bring an ADA claim as a class action where appropriate and/or to join his claim with the claims of other employees.  The Arbitration Agreement expressly forbids any sort of class or collective action, in violation of Federal Rule of Civil Procedure 23 (authorizing class actions); many federal employment statutes that expressly protect class and collective actions; and federal labor law, which guarantees employees the right to act in concert and to collectively vindicate their workplace rights.

   6)  The right to fully present an ADA claim in a fair, neutral, and adequate forum and to have the laws of the ADA enforced as written, including the substantive right to appeal an incorrect legal ruling.  Neiman Marcus inserted numerous provisions in the Arbitration Agreement in an effort to create a biased and inadequate forum that would strongly favor Neiman Marcus and disadvantage its California employees.  For example, even though Bayer is a California employee and any arbitration would take place in California, Neiman Marcus inserted provisions providing that: only Texas residents who were members of the Texas bar could serve as arbitrators to hear his claim; only Texas or Fifth Circuit law will apply; Neiman Marcus has the right to add "additional" arbitrators to the panel at any time prior to the hearing if it is not satisfied with the first arbitrator; discovery will be severely limited; and costs may be awarded against the employee, in violation of California and federal law.

   18.  By conditioning Bayer's continued employment on his consent to be bound by the rights-stripping terms of its Arbitration Agreement, Neiman Marcus attempted to coerce and intimidate Bayer into giving up certain rights provided to him under the

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1    ADA.   Such an attempt by Neiman Marcus to coerce and intimidate Bayer into giving

2    up his rights is unlawful and a violation of the ADA, which prohibits in 42 U.S.C.

3    §12203(b) any such effort to "coerce, intimidate or threaten" any individual in the

4    exercise or enjoyment of any right granted or protected by the ADA.

5        19.  In response to Neiman Marcus's unlawful effort to coerce and intimidate

6    Bayer into giving up his rights under the ADA pursuant to the Arbitration Agreement,

7    Bayer filed a second administrative claim with the EEOC against Neiman Marcus on

8    approximately July 9, 2007 ("EEOC Charge #2)".  A true and correct copy of EEOC

9    Charge #2 is attached hereto as **Exhibit C**.  In EEOC Charge #2, Bayer alleged that

10   Neiman Marcus had discriminated against him in violation of his rights under the ADA

11   (and under other federal civil rights discrimination statutes) by attempting to coerce and

12   intimidate Bayer into signing the Arbitration Agreement as a condition of his continued

13   employment.  As a person with a physical disability under the ADA who had a pending

14   claim against Neiman Marcus for disability discrimination, Bayer was aggrieved by

15   Neiman Marcus's effort to coerce him into giving up certain rights under the ADA.  In

16   EEOC Charge #2, Bayer alleged that Neiman Marcus's conduct in even *trying* to

17   coerce him to enter into an arbitration agreement was illegal under §12203(b) of the

18   ADA.  In EEOC Charge #2, Bayer also claimed that Neiman Marcus's arbitration

19   program itself was illegal and unconscionable.

20       20.  Bayer refused to sign the Arbitration Agreement and continued to work for

21   Neiman Marcus, despite Neiman Marcus's threats to terminate him if he did not sign

22   the acknowledgement form and agree to be bound by the Neiman Marcus arbitration

23   program by July 15, 2007.  Bayer repeatedly and expressly communicated to Neiman

24   Marcus, both orally and in writing, that he would not sign the arbitration documents; that

25

26

27   *BAYER v. NEIMAN MARCUS GROUP, INC.*

28   COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

he would not agree or consent to Neiman Marcus's arbitration program; and that he would not agree to be bound by it. On at least four different occasions, Bayer told his supervisors that he was refusing to sign any arbitration documents and that he was refusing to agree to, or be bound by, Neiman Marcus's arbitration program. Bayer also delivered two different letters to Neiman Marcus that explained why he was refusing to sign any arbitration forms, why he was refusing to be a party to, or agree to the Arbitration Agreement, and why the Arbitration Agreement was illegal. Because Bayer refused to sign the Arbitration Agreement and refused to consent to its terms or to otherwise be bound by it, no binding agreement to arbitrate was ever formed between Bayer and Neiman Marcus. As a result, the Federal Arbitration Act has no application to the dispute between Bayer and Neiman Marcus.

21.  In addition to filing EEOC Charge #2, Bayer also filed charges against Neiman Marcus with the National Labor Relations Board on July 19, 2007 and October 2, 2007, alleging that Neiman Marcus's arbitration program was illegal and unconscionable. True and correct copies of Bayer's NLRB charges of July 19, 2007 and October 2, 2007 are attached hereto as **Exhibits D** and **E.**

22. In October 2007, the EEOC issued a right to sue letter to Bayer in connection with EEOC Charge #1, his original EEOC charge of discrimination. In January 2008, Bayer filed a civil lawsuit against Neiman Marcus in the United States Court for the Northern District of California for violation of the ADA, based on Neiman Marcus's original discriminatory conduct in June 2007 with respect to Bayer's physical disability and Neiman Marcus's refusal to accommodate Bayer by providing him full-time employment, *Tayler Bayer v. Neiman Marcus Holdings, Inc.*, Action No. C08-0480-PJH ("the January 2008 Complaint"). In April 2008, Bayer and Neiman Marcus entered

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

into a settlement of the January 2008 Complaint ("the Settlement Agreement").  The Settlement Agreement specifically excluded from its scope, and did not release, any claims related to Bayer's EEOC Charge #2 or any other claims that Bayer might have relating to the validity or enforceability of the Arbitration Agreement.  Bayer continued to work at Neiman Marcus throughout 2008.

23.  With respect to EEOC Charge #2, which Bayer had filed in July 2007 and in which Bayer alleged that Neiman Marcus had violated the ADA and other federal employment laws by virtue of the Arbitration Agreement, the EEOC continued to investigate the matter during 2008 and so did not issue a right to sue letter.  On June 30, 2009, the EEOC issued a "Determination" letter with respect to EEOC Charge #2, in which the EEOC stated that there was "cause" to believe that the Arbitration Agreement contained unlawful provisions that violated Bayer's rights under various federal employment laws.

24.  In January 2009, Neiman Marcus terminated Bayer's employment in retaliation for Bayer having previously filed discrimination and retaliation charges against Neiman Marcus with the EEOC, including having filed EEOC Charges #1 and #2 and the January 2008 Complaint.

25.  In response to Neiman Marcus's termination of Bayer's employment in January 2009, Bayer filed with the EEOC a new charge for discrimination and retaliation against Neiman Marcus in August 2009 ("EEOC Charge #3").  A true and correct copy of EEOC Charge #3 is attached hereto as **Exhibit F**.

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

26.   In July 2011, the EEOC issued a right to sue letter to Bayer with respect to Bayer's EEOC Charge #3 relating to his January 2009 termination.  Bayer thereby exhausted his administrative remedies with respect to his termination claim.  In July 2011, Bayer filed a civil lawsuit against Neiman Marcus in the United States District Court for the Northern District of California for violation of the ADA, based on Neiman Marcus's discriminatory and retaliatory termination of his employment, *Tayler Bayer v. Neiman Marcus Group, Inc.*, Action No. CV-11-37050-EMJ ("the July 2011 Complaint"). After Bayer filed the July 2011 Complaint, Neiman Marcus filed a Motion to Compel Arbitration, based on the Arbitration Agreement.  In November 2011, the District Court denied Neiman Marcus's Motion to Compel Arbitration and ordered the case to proceed in District Court.  In December 2011, Neiman Marcus filed an appeal from the District Court's Order denying arbitration with the Ninth Circuit Court of Appeals.  The District Court then stayed further federal court proceedings pending the final decision of the Ninth Circuit.  That case is presently pending before the Ninth Circuit, *Tayler Bayer v. Neiman Marcus Group, Inc.*, Case No. 11-17920, with oral argument set to be heard on October 18, 2013.

27.   In July 2013, the EEOC issued Bayer a right to sue letter relating to Bayer's EEOC Charge #2, which Bayer had filed in July 2007. Bayer has thereby now exhausted his administrative remedies with respect to his claim that Neiman Marcus violated the ADA when it attempted to coerce and intimidate him into giving up certain

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1   rights under the ADA by threatening to terminate his employment unless he consented

2   to the Arbitration Agreement.

### FIRST CAUSE OF ACTION
### (Violation of 42 U.S.C. §12203)

28.  Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 27 herein.

29.  42 U.S.C. §12203(a) of the ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA], or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under [the ADA]."

30.  42 U.S.C. §12203(b) provides: "It shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]."

31.  Pursuant to 42 U.S.C. §12117(a), the ADA provides to any employee alleging discrimination on the basis of disability in violation of the ADA the same powers, remedies, and procedures that exist under the Civil Rights Act of 1964 (42 U.S.C. §§2000e et seq.).

32.  In accordance with 42 U.S.C §12117(a), an employee who alleges violations of the ADA has the right to bring a civil action against the employer in a federal judicial forum (as provided by 42 U.S.C. §§2000d-5(f)(1), (3)), including the right to have his or her action governed by the federal rules of civil procedure, the right to full discovery under those rules, and the right to bring a class action and/or join his or her claim with the claims of others.  In accordance with 42 U.S.C §12117(a), an employee

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

who alleges violations of the ADA also has the right to a jury trial (as provided by 42 U.S.C. §1981a(c)).  In sum, the ADA grants Bayer the statutory right to bring his ADA claim against Neiman Marcus in a federal court forum (with all the procedures and rights of that forum) and the right to have a jury trial in that forum.

33.  In accordance with 42 U.S.C. §12117(a), an employee who alleges violations of the ADA also has the right to the same remedies and procedures relating to the EEOC that govern actions brought under the Civil Rights Act of 1964, as set forth in 42 U.S.C. §2000e-5.  Thus, an employee such as Bayer who alleges discrimination under the ADA must follow the administrative remedies and procedures of the EEOC and must allow the EEOC an opportunity to investigate any such claim, before bringing an action against his employer.  Under these provisions, before bringing any such action himself, an employee must file a charge with the EEOC within 300 days of the discriminatory conduct; wait for the EEOC to finish its investigation or other processing of the charge, including EEOC efforts at conciliation; and receive a right to sue letter from the EEOC.

34.  Under the ADA and federal law, an employee has the right to have his ADA claim fully and fairly heard in an appropriate forum, including the right to have the federal rules of civil procedure and discovery govern his action.  Under the ADA and federal law, an employee has the further right to have the ADA enforced as written, including the substantive right to appeal an incorrect legal ruling.

35.  Neiman Marcus imposed its mandatory Arbitration Agreement on Bayer in June 2007, after Bayer had objected to Neiman Marcus about its discriminatory conduct with respect to his disability and after Neiman Marcus had refused to accommodate his disability, and with the knowledge that Bayer would be pursuing ADA

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

claims against it.  The Arbitration Agreement included many provisions that deprived Bayer of guaranteed rights under the ADA and federal law.  Neiman Marcus threatened Bayer that, unless Bayer signed the Arbitration Agreement or otherwise agreed to its terms, Bayer would be terminated. Indeed, the Arbitration Agreement specifically applied to any past, existing or future claims for discrimination, including any claims under the ADA, and thus the Arbitration Agreement applied to claims that Bayer already had pending against Neiman Marcus, in addition to applying to claims that Bayer might bring in the future.  Arbitration Agreement, para. 3.  In demanding that Bayer agree to the terms of the Arbitration Agreement as a condition of maintaining his employment with Neiman Marcus, Neiman Marcus attempted to coerce, intimidate, threaten and interfere with Bayer's exercise or enjoyment of rights granted to him under the ADA, in violation of 42 U.S.C. §12203(b).

36.     The Arbitration Agreement denied Bayer numerous rights, remedies, and procedures granted to him under the ADA and other federal laws.  For example, the Arbitration Agreement denied Bayer the right of access to a judicial forum for any claim by Bayer that Neiman Marcus had violated the ADA.  Arbitration Agreement, para. 1(d). The Arbitration Agreement also denied Bayer the right to a jury trial for any claim by Bayer that Neiman Marcus had violated the ADA.  *Id.*  The Arbitration Agreement also denied Bayer the substantive right to appeal errors of law, the right to full discovery, the right to bring a class action, and the right to join his claim with the claims of others. Arbitration Agreement, paras. 1, 12, 15.

37.  The Arbitration Agreement impermissibly alters and shortens the applicable statute of limitations for certain claims which Bayer might have under the ADA.  Thus, the Arbitration Agreement requires that an employee exhaust all administrative

---

*BAYER v. NEIMAN MARCUS GROUP, INC.*

COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

remedies under the ADA (including exhausting administrative remedies with the EEOC) before the employee can bring a claim alleging a violation of the ADA or other federal anti-discrimination laws. Arbitration Agreement, paras. 5(b); 4(b). However, the Arbitration Agreement simultaneously provides that any claim brought against Neiman Marcus must be brought within one year of the date that the employee's employment with Neiman Marcus ceased. *Id.*, para. 14(a). The Arbitration Agreement thus creates a situation in which employees could be deprived of the benefit of the relevant statute of limitations, since many claims under the ADA or other anti-discrimination laws would be barred under the one-year rule mandated by the Arbitration Agreement. For example, the one year post-employment statute of limitations set forth in the Arbitration Agreement prevents former employees from bringing retaliation claims that arise more than one year after their employment ends. Similarly, under the ADA, employees have a statutory right to wait up to 300 days before filing a claim with the EEOC, and employees must then wait until receipt of a right to sue letter from the EEOC before they can file an action against an employer for an ADA violation. However, under the terms of the Arbitration Agreement, if the EEOC failed to issue its right to sue letter until more than one year after the aggrieved employee's employment had ended, the employee would be barred from suing Neiman Marcus. Indeed, in this very case, Bayer filed his EEOC Charge #2 in July 2007, but he did not receive his right to sue letter for EEOC Charge #2 until July 18, 2013--more than three years after Bayer's employment with Neiman Marcus had ended in January 2009. Similarly, Bayer filed his EEOC Charge #3 in August 2009, but he did not receive his right to sue letter for EEOC Charge #3 until April 2011. In both situations, the EEOC did not issue its right to sue letters until more than two years after Bayer's employment had ceased, long after the

---

*BAYER v. NEIMAN MARCUS GROUP, INC.*

COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

16

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

one year "post-employment" limitations period of the Arbitration Agreement.  It is not uncommon for the EEOC to take a significant amount of time to investigate a charge and issue a right to sue letter, which could often lead to the Arbitration Agreement's "shortened" statute of limitations resulting in employees losing their right to sue under the ADA or other federal civil rights laws.

      38.   Under the ADA, which incorporates the rights, remedies, and procedures of the Civil Rights Act of 1964, Bayer is entitled to file a charge with the EEOC and to have the EEOC investigate and administer his claim of discrimination.  However, the Arbitration Agreement requires Bayer to file his arbitration claim against Neiman Marcus within one year of the termination of his employment while simultaneously requiring Bayer to obtain a right to sue letter prior to fling his arbitration claim.  By doing so, the Arbitration Agreement unlawfully deprives Bayer of his right to the full protections and benefits of Title VII, including the administrative investigation and conciliation efforts of the EEOC.  For example, in those circumstances where the EEOC is still in the process of investigating a charge of discrimination filed by Bayer but the Arbitration Agreement's one-year post-employment "filing" period was about to expire, Bayer would be compelled to ask the EEOC to end its investigation and issue him a right an immediate right to sue letter, in order to preserve his right to sue Neiman Marcus for a violation of the ADA.  Bayer would thereby be deprived of the right to have the EEOC conduct a full investigation of his administrative charge.

      39.   The Arbitration Agreement further violates the ADA and federal law in that the Arbitration Agreement prohibits Bayer from bringing a claim as a class action and prohibits Bayer from joining his claims with the claims of other employees.  Arbitration Agreement, para. 15.  The prohibition on class actions violates Federal Rule of Civil

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

Procedure 23, which gives plaintiffs the right to bring class actions, and violates federal rules of procedure permitting joinder. By prohibiting class actions and joinder, the Arbitration Agreement prevents employees from sharing costs and fees and thereby makes it more difficult for employees to bring claims against Neiman Marcus. The Arbitration Agreement's prohibition on class actions or concerted action by employees also violates numerous federal statutes which specifically protect the right of employees to bring joint or collective action (including class actions) in order to vindicate rights under those statutes, including the Age Discrimination in Employment Act (29 U.S.C. §§621, 626(b)); the Family Medical Leave Act (29 U.S.C. §§ 2601, 2617(a)(2)); the Fair Labor Standards Act (29 U.S.C. §§201, 216(b)); and the Equal Pay Act (29 U.S.C. §§206(d), 216(b)). Similarly, under federal labor law, employees are guaranteed the right to act in concert and to collectively vindicate their rights. The National Labor Relations Board ("NLRB") and the federal courts have repeatedly held that the filing of a civil action by groups of employees is protected concerted action under the National Labor Relations Act ("NLRA"), 29 U.S.C. §151 et seq. The Arbitration Agreement's prohibition on class actions or concerted action by employees in bringing discrimination claims unlawfully interferes with and restricts Bayer's ability to assert and vindicate his rights under the ADA and NLRA. In July 2007 and October 2007, Bayer filed charges with the NLRB, in which he asserted that the Neiman Marcus Arbitration Agreement violated the NLRA by prohibiting him from consolidating or joining claims with other employees. *See*, Exhibit D. In May and June 2010, in response to Bayer's charge, the General Counsel of the NLRB required Neiman Marcus to change the language of the Arbitration Agreement to ensure that employees had the right to file joint or collective claims with other employees, and to prohibit any

*BAYER v. NEIMAN MARCUS GROUP, INC.*

COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

retaliation against employees who sought with other employees any joint, collective or class action relief.  Subsequently, in *D.R. Horton, Inc., 12-CA-25764,* the NLRB held that an employer's mandatory arbitration agreement that prohibits employees from bringing class actions, collective actions, or from otherwise joining claims with other employees, violates §7 and §8(a)(1) of the NLRA and is an unfair labor practice.

40.  Under the ADA and federal law, Bayer has the right to have a full and fair opportunity to present his claim in a fair and impartial forum.  Bayer also has the right to have the laws of the ADA enforced as written under applicable law.  The Arbitration Agreement denies Bayer the right to have a full and fair opportunity to present his claim; denies Bayer the right to a fair and impartial forum; and denies Bayer the right to have the laws of the ADA enforced under applicable law.  Through its mandatory Arbitration Agreement, Neiman Marcus has created a forum that has been structured to favor Neiman Marcus and that is so biased and inadequate that Neiman Marcus has exacted a *de facto* waiver of Bayer's rights under Title VII.  The Arbitration Agreement contains the following defective provisions, among others:

1)  Bayer was a California resident who performed all of his work for Neiman Marcus in California, and Bayer is thus entitled to have the ADA enforced under applicable Ninth Circuit law.  However, the Arbitration Agreement provides that the law of Texas and the law of the Fifth Circuit Court of Appeals shall be followed.  Arbitration Agreement, para. 16.  Neiman Marcus included this provision in its Arbitration Agreement because Neiman Marcus believed that the law of Texas and the law of the Fifth Circuit would be more favorable to Neiman Marcus.

2)  In an effort to make the arbitration process unfair and biased toward Neiman Marcus (whose corporate headquarters are in Texas), the Arbitration

---

*BAYER v. NEIMAN MARCUS GROUP, INC.*

COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

19

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

Agreement provides that all arbitrators shall be residents of Texas and licensed to practice law in Texas.  Arbitration Agreement, para. 9(c).  By limiting the pool of potential arbitrators in this manner, Neiman Marcus increased the chances that the arbitrators would favor Neiman Marcus due to the "repeat player" effect, i.e., local arbitrators who wanted to be selected by Neiman Marcus in future arbitration cases would be heavily incentivized to favor Neiman Marcus in an arbitration proceeding.  By limiting the panel of potential arbitrators in this manner, Neiman Marcus also increased the chances that Neiman Marcus would have more knowledge of, and familiarity with, the arbitrators.  Furthermore, by limiting the pool of potential American Arbitration Association arbitrators to Texas attorneys, Neiman Marcus ensured that the pool of potential arbitrators would consist of a disproportionately high percentage of defense lawyers, who would be more likely to favor Neiman Marcus in an arbitration hearing.

3)  Although the Arbitration Agreement provides that the arbitration is normally to be conducted by one arbitrator jointly selected by the parties, the Arbitration Agreement provides that, at any point prior to the commencement of the arbitration hearing, the "respondent" (which will almost always be Neiman Marcus in an employment case) may elect to add two additional arbitrators to create a three person panel.  In other words, the Arbitration Agreement ensures that, if Neiman Marcus does not like the preliminary rulings or appearance of the jointly selected arbitrator, Neiman Marcus can choose to add two new arbitrators to the panel.

4)  The Arbitration Agreement contains severe limitations on the discovery available to Bayer, even though Bayer (as the plaintiff) needs such discovery in order to carry his burden of proof.  Arbitration Agreement, para. 12.  Thus, the Arbitration Agreement limits Bayer to a total of three depositions; provides that no

---

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

deposition may last more than six hours; provides that a deposition of a corporate representative must be limited to no more than three designated topics; and provides that Bayer may have no more than 30 total discovery requests, with each document category, each individual interrogatory, and each deposition, counting as separate "request." In addition, all discovery must be completed within 90 days of the arbitrator's appointment, and the arbitration hearing must occur within 120 days of the selection of the arbitrator. These discovery restrictions place a significant hardship on an employee asserting claims under the ADA, since the employee has the burden of proof in attempting to prove discrimination under the ADA and the employee inevitably needs to obtain substantial discovery from the employer in order to establish his claims.

5) Under California and federal law, an employee may not be required to pay the costs of an arbitration proceeding involving the assertion of statutory rights if the employer has required arbitration as a mandatory condition of employment. However, the Arbitration Agreement provides that the arbitrator may award the costs of the arbitration proceeding against the employee as part of any award. Arbitration Agreement, para. 11. Furthermore, under federal law, a party may be relieved of the cost of filing a lawsuit in federal court claim if he is unable to afford the filing fee. However, the Arbitration Agreement requires an employee to pay the arbitration filing fee of $150 when the claim is filed, and makes no provision for relieving the employee of this fee.

6) The Arbitration Agreement prevents Bayer from having his claim heard in a neutral forum where the laws of the ADA must be enforced as written, and strips Bayer of his substantive right to appeal errors of law or incorrect legal rulings. Because arbitrators are not required to follow the law, and because arbitrators' decisions may

---

*BAYER v. NEIMAN MARCUS GROUP, INC.*

COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

21

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

not be overturned on appeal even if they make blatant errors of law, the Arbitration Agreement deprives Bayer of the right to have the ADA enforced as written and thus deprives Bayer of the protection of the ADA.

41.  For the reasons set forth above in Paragraph 40, the Arbitration Agreement deprives Bayer of the right to have a full and fair opportunity to present his claim in a fair and impartial forum, and further denies Bayer the right to have the laws of the ADA enforced as written.

42.  In demanding that Bayer agree to be bound by the Arbitration Agreement and/or consent to the terms of the Arbitration Agreement, or be fired, Neiman Marcus attempted to coerce, intimidate, threaten and interfere with Bayer's exercise or enjoyment of the rights granted or protected by the ADA.  In doing these acts and omissions, Neiman Marcus violated the ADA, including violating 42 U.S.C. §12203(b).

43.  As a direct and proximate result of defendant's wrongful conduct in violation of the ADA, plaintiff has suffered damages, including emotional distress damages and attorneys' fees.

44.  Since Bayer's termination, Neiman Marcus has continued to attempt to impose and enforce its illegal Arbitration Agreement against Bayer, and has continued to attempt to coerce, intimidate and threaten other Neiman Marcus employees (and prospective employees) into consenting to illegal and unconscionable arbitration agreements as a condition of employment.  Thus, Neiman Marcus is still attempting to enforce its illegal Arbitration Agreement against Bayer in connection with litigation which Bayer currently has against Neiman Marcus arising out of the termination of Bayer's employment.  *See Tayler Bayer v. Neiman Marcus,* Action No. 11-CV-03705-MEJ (D. Nor. Cal.), appeal pending (*Tayler Bayer v. Neiman Marcus,* Action No. 11-

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

17920 (9th Cir)).  Neiman Marcus also continues to use and impose on employees an arbitration agreement which contains numerous illegal and unconscionable provisions which purport to deprive Neiman Marcus employees of critical substantive and procedural federal rights under the ADA.  Thus, Neiman Marcus continues to demand that its employees and prospective employees agree to be bound by its arbitration agreement and/or consent to the terms of its arbitration agreement, as a condition of employment.  In doing these actions, Neiman Marcus is continuing to attempt to coerce, intimidate, threaten and interfere with its employees' (and prospective employees') exercise or enjoyment of rights granted or protected by the ADA, in violation of 42 U.S.C. §12203(b).

WHEREFORE, plaintiff prays for judgment as follows:

1.     For economic damages according to proof;

2.     For general, non-economic damages according to proof;

3.     For attorneys' fees pursuant to 42 U.S.C. §12205;

4.     For costs of suit;

5.     For interest on all sums awarded; and

6.     For a declaration that Neiman Marcus's mandatory arbitration agreement is unlawful, invalid and unenforceable;

7.     For an injunction prohibiting Neiman Marcus from attempting to coerce, intimidate or threaten employees (or potential employees) into waiving their rights under the ADA; and

---

*BAYER v. NEIMAN MARCUS GROUP, INC.*

COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

8.    For such other relief as the Court deems proper.


Dated:  September 27, 2013          McGUINN HILLSMAN & PALEFSKY

_____
Cliff Palefsky
Attorneys for Plaintiff, Tayler Bayer


**JURY TRIAL DEMANDED**

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 550-2007-01640 |

California Department Of Fair Employment & Housing        and EEOC
_State or local Agency, if any_

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Mr. Tayler Bayer | (510) 451-4210 | |

Street Address: 625 22nd Street # B, Oakland, CA 94612

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| NEIMAN MARCUS | 500 or More | (415) 362-3900 |

Street Address: 150 Stockton St, San Francisco, CA 94108

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: 06-19-2007
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working for Respondent on March 20, 2006. My current job title is Cosmetic Sales Associate. Respondent first received notice of my disability on March 22, 2007. On or about June 8, 2007 I requested, as a reasonable accommodation, a work-week of 30 hours within no more than four consecutive days. Respondent has failed to grant such reasonable accommodation, in that (1) I have been forced to work less than 30 hours per week; and (2) Respondent has forced me to take one sick day per week, which will exhaust my FMLA leave by around July 22.

Respondent's reason for taking its action is that I am working a position that does not require working more than six hours per day.

I believe that I have been denied reasonable accommodation, in violation of the Americans with Disabilities Act of 1990, as amended. I further believe that I have been retaliated against, in violation of the same statute.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct.

Date: 7/6/2007   x Tayler Bayer
Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*



NMG RESOLUTIONS

# THE NEIMAN MARCUS GROUP, INC.
## Mandatory Arbitration Agreement

> Please see inside front cover
> FOR IMPORTANT POINTS

ESTE DOCUMENTO MUY IMPORTANTE AFECTARÁ SUS DERECHOS LEGALES.   SI LE GUSTARÍA TENER ESTE DOCUMENTO DEL PLAN EN ESPAÑOL, FAVOR DE LLAMAR AL NÚMERO JULY 15, 2007.

# THE NEIMAN MARCUS GROUP, INC.
## MANDATORY ARBITRATION AGREEMENT

*THIS MANDATORY ARBITRATION AGREEMENT REQUIRES YOU TO SUBMIT ALL COMPLAINTS, DISPUTES, AND LEGAL CLAIMS ("DISPUTES") YOU HAVE AGAINST THE COMPANY, AND THE COMPANY TO SUBMIT ALL DISPUTES IT HAS AGAINST YOU, TO BINDING ARBITRATION. THE MANDATORY ARBITRATION AGREEMENT COVERS ALL DISPUTES, WHETHER THEY BE COMMON LAW, STATUTORY (SUCH AS STATE AND FEDERAL DISCRIMINATION CLAIMS), OR OTHERWISE – IN SHORT ANY DISPUTE.*

*THE MANDATORY ARBITRATION AGREEMENT MEANS BOTH YOU AND THE COMPANY ARE WAIVING THE RIGHT TO A TRIAL BY JURY OR TO A TRIAL BEFORE A JUDGE IN A COURT OF LAW ON ALL DISPUTES. INSTEAD, ALL DISPUTES MUST BE SUBMITTED TO FINAL AND BINDING ARBITRATION.*

*THIS AGREEMENT FOR MANDATORY ARBITRATION IS NOT OPTIONAL. IT IS MANDATORY AND A CONDITION AND TERM OF YOUR EMPLOYMENT. IF YOU ARE AN EMPLOYEE ON OR AFTER JULY 15, 2007, WHICH IS THE EFFECTIVE DATE OF THIS AGREEMENT (THE "EFFECTIVE DATE"), YOU ARE DEEMED TO HAVE ACCEPTED AND AGREED TO THE MANDATORY ARBITRATION AGREEMENT BY COMING TO WORK AFTER THAT DATE. IF YOU ACCEPT EMPLOYMENT WITH THE COMPANY AFTER THE EFFECTIVE DATE, YOU ARE DEEMED TO HAVE ACCEPTED AND AGREED TO THIS MANDATORY ARBITRATION AGREEMENT BY ACCEPTING A JOB AT THE COMPANY.*

*NOTHING IN THE MANDATORY ARBITRATION AGREEMENT KEEPS YOU FROM FILING A CHARGE OR COMPLAINT WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR LIKE STATE AGENCIES.*

# THE NEIMAN MARCUS GROUP, INC.

## MANDATORY ARBITRATION AGREEMENT

This is an agreement (the "Agreement") between The Neiman Marcus Group, Inc. and its subsidiaries and divisions ("NMG" or the "Company"), on the one hand, and on the other hand, each Covered Employee of NMG described in Section 2 below.  The effective date of this Agreement is July 15, 2007 (the "Effective Date").  *Each Covered Employee's employment or continued employment with the Company after the Effective Date constitutes assent, acceptance, consent, and consideration for this Agreement to arbitrate, both during the time of employment and after termination of employment.*

The following are the terms and conditions of this Agreement.

1.  **Exclusive Agreement to Resolve Disputes Through Arbitration.**  Subject to the remaining terms hereof, the following is agreed:

    a.  ***Employee Claims.***  All "Claims" described in Section 3 below that any Covered Employee may have against the Company shall be resolved **exclusively** through final and binding arbitration as provided in this Agreement.

    b.  ***Company Claims.***  All "Claims" described in Section 3 below that the Company may have against any Covered Employee shall be resolved **exclusively** through final and binding arbitration as provided in this Agreement.

    c.  ***Definitions.***  For purposes of this Agreement, the term "Company" includes NMG as well as its divisions, subsidiaries, and affiliated entities, all former, current, and future officers, directors, and employees of all such entities, all benefit plans and their fiduciaries and administrators related to the Company, and all successors and assigns of these individuals or entities.

    d.  UNDER THIS AGREEMENT, THE COMPANY AND ALL COVERED EMPLOYEES KNOWINGLY AND VOLUNTARILY WAIVE ANY AND ALL RIGHTS THEY HAVE UNDER LAW TO A TRIAL BEFORE A JURY OR BEFORE A JUDGE IN A COURT OF LAW.

2.  **Persons Covered and Not Covered by This Agreement.**  All employees of the Company who are employed by the Company on or after the Effective Date, and all employees who accept employment on or after the Effective Date, are covered by this Agreement and are referred to as "Covered Employees." Covered Employees shall also include an employee's spouse, children, personal representatives, successors, heirs or assigns, and generally anyone else claiming by or through the employee.  However, this Agreement does not cover employees who have their own separately signed employment agreement with the Company and all employees covered by a collective bargaining agreement.

3.   **Claims Covered by This Agreement.**  The Claims covered by this Agreement that each party is agreeing to resolve exclusively by binding arbitration are any and all complaints, disputes, or legal claims that a Covered Employee or the Company may have against the other, arising out of or connected in any way with the Covered Employee's employment with the Company (hereinafter "Claims").   Without limiting the generality of that statement, such Claims include, but are not limited to:

- Discrimination or harassment on the basis of race, color, gender, sexual orientation, religion, national origin, age, disability, or any other unlawful basis, including, but not limited to, claims alleged under the Age Discrimination in Employment Act ("ADEA"); the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"); Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991; the Americans with Disabilities Act ("ADA"); the Family and Medical Leave Act ("FMLA"); any other federal or state discrimination statute; the Fair Labor Standards Act ("FLSA"); and state statutes and common law regulating employment termination;

- Violations of any common law or constitutional provision, federal, state, county, municipal, or other governmental statute, ordinance, regulation, or public policy relating to workplace health and safety, voting, meal or rest breaks, state service letters, minimum wage and overtime pay, pay days, holiday pay, vacation pay, severance/separation pay, or payment at termination;

- Violations of any common law or other constitutional provision, federal, state, county, municipal, or other governmental statute, ordinance, regulation, or public policy, including, but not limited to, claims alleged under the following statutes: Consolidated Omnibus Budget Reconciliation Act ("COBRA"); Davis-Bacon Act; Drug Free Workplace Act of 1988; Electronic Communications Privacy Act of 1986; Employee Polygraph Protection Act of 1988; Employee Retirement Income Security Act of 1974 ("ERISA"), as amended; Fair Credit Reporting Act; Federal Omnibus Crime Control and Safe Streets Act of 1968; The Hate Crimes Prevention Act of 1999; The Occupational Safety and Health Act; Omnibus Transportation Employee Testing Act of 1991; Privacy Act of 1993; Portal to Portal Act; The Sarbanes-Oxley Act; Veterans Reemployment Rights Act; and Worker Adjustment and Retraining Notification Act ("WARN");

- Personal injuries except those covered by workers' compensation;

- Retaliation for filing a protected claim for benefits (such as workers' compensation) or exercising rights under any statute;

- Breach of any express or implied contract, breach of a covenant of good faith and fair dealing, and claims of wrongful termination or constructive discharge;

- Breach of any common law duty of loyalty or its equivalent;

- Exceptions to the employment-at-will doctrine;

- Any common law tort claim, including, but not limited to, wrongful discharge, malicious prosecution, wrongful arrest/wrongful imprisonment, negligence, gross negligence, defamation, slander, fraud, misrepresentation, invasion of privacy, tortious interference, trespass to chattel, conversion, negligent or intentional infliction of emotional distress, or "whistleblowing;" and

- All other employment-related legal disputes, controversies, or claims arising out of, concerning, or relating in any way to, employment or cessation of employment with the Company.

Irrespective of when a Claim accrued or the facts on which it is based occurred, if a Claim is brought by either a Covered Employee or the Company after the Effective Date, then it shall be governed by this Agreement.

4. **Claims Not Covered by This Agreement.** The following claims are not covered by this Agreement:

   a.   claims for workers' compensation or unemployment compensation benefits;

   b.   claims for benefits based upon any Company-sponsored pension or benefit plan that is subject to ERISA and that contains a claims procedure that complies with ERISA; and

   c.   claims covered by a collective bargaining agreement, in which case the terms, conditions, and procedures of that collective bargaining agreement control.

If there is any inconsistency between this Section and the definition of covered Claims in Section 3, then this Section controls.

5. **Agreement Limitations.**

   a.   This Agreement does not preclude the parties from agreeing to resolve claims not covered by this Agreement pursuant to the terms of this Agreement.

   b.   This Agreement does not alter an employee's obligation, nor affect an employee's right, to satisfy the conditions precedent to bringing a claim under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Texas Commission on Human Rights Act, or any other state or federal statute, rule, regulation, or law.

   c.   This Agreement does not prohibit a Covered Employee from filing a charge or complaint with a governmental agency such as the Equal Employment Opportunity Commission, the National Labor Relations Board, or like state agencies. However, upon receipt of a right to sue letter or similar administrative determination, the Covered Employee's claim becomes subject to arbitration under this Agreement.

6. **Arbitration Agency.** Arbitration shall be administered by the American Arbitration Association ("AAA"). If, for whatever reason, the AAA is unable or unwilling to conduct the arbitration, the arbitration shall be conducted by Judicial Arbitration and Mediation Services, Inc. ("JAMS"), in which case, all references to AAA herein shall be deemed to be references to JAMS.

7. **Mediation Prior to Arbitration.** No arbitration may be commenced by any party until a mediation is conducted before a neutral mediator appointed by either AAA or JAMS, whichever agency the initiating party may select. The mediator's fee and other association charges for mediation shall be borne by the Company. To initiate mediation, the initiating party must comply with the selected agency's rules. The AAA can be reached by calling 972-702-8222, or reviewing their website at www.adr.org. JAMS can be reached by calling 214-720-6010, or reviewing their website at www.jamsadr.com. The mediation rules of these independent agencies set forth not only what must be included in a Demand for Mediation, but also the procedures that will govern mediation.

8. **Initiation of the Arbitration Process.** To initiate the arbitration process, the aggrieved party must file a written demand for arbitration setting forth the factual and legal basis of the complaint, the amount of damages sought, if any, and any other information set forth in AAA's rules (the "Demand for Arbitration"). The initiating party must file a Demand for Arbitration with the AAA. The initiating party should call the AAA to get detailed information on where to obtain a copy of the rules and where to send a Demand for Arbitration. The AAA's contact information is set forth in Section 7. The rules of the AAA set forth not only what must be included in a Demand for Arbitration, but also set forth the responses that are required upon receipt of a Demand for Arbitration and the other procedures that will govern arbitration. Arbitration shall be conducted in accordance with the procedures set forth in the AAA rules of procedure for employment disputes as those rules change from time-to-time, except where those rules conflict with this Agreement, in which case the terms of this Agreement control. Any statement in the AAA rules that those rules govern over conflicts with this Agreement are not applicable.

9. **Selection of Arbitrator.** The following shall govern the selection of an arbitrator:

   a. Each arbitration shall be conducted by one (1) arbitrator. However, the respondent has the right at its sole discretion to elect to have two (2) additional arbitrators added, so that the matter will be heard by three (3) arbitrators. The election to add two (2) additional arbitrators may be made by the respondent at any time before the actual arbitration hearing formally commences. Upon receipt of such request, notwithstanding any other provision herein, the AAA shall postpone the commencement of the arbitration hearing long enough to permit selection of the additional arbitrators who should be selected as set forth in this paragraph.

   b. Each arbitrator shall be a "neutral" arbitrator selected by the AAA in accordance with its rules and procedures for selection of neutral arbitrators. Each party shall have the opportunity to participate in the selection process as set forth in the AAA rules.

4

    c.    All arbitrators shall come from a pool of neutral arbitrators who are licensed to practice law in Texas and reside in Texas.

    d.    The AAA shall attempt to provide arbitrators experienced in employment law, but shall be able to draw from its pool of neutral commercial or other arbitrators if the AAA deems it necessary or appropriate, subject in all cases to the requirements of subsection c.

    e.    Any dispute as to the qualification or disqualification of an arbitrator shall be determined exclusively by the AAA, pursuant to its rules and procedures, and such determination shall be final and binding.

10.    **Legal Representation.**  Each party may be represented by legal counsel of their selection at any arbitration covered by this Agreement, although legal counsel is not required.

11.    **Fees and Costs.**  If a Covered Employee initiates the arbitration, they shall pay the AAA a filing fee of $150.00 when the claim is filed. The Company shall pay the remainder of any AAA filing fee. If the Company initiates the arbitration, it shall pay all of the AAA filing fee. All other AAA costs and the arbitrator fees, irrespective of whether the arbitration was initiated by a Covered Employee or the Company, shall be borne by the Company, provided that the arbitrator shall be free to award such costs as part of any award, to the extent such an award is permitted by applicable law. During the pendency of the arbitration, each side shall bear its own costs and expenses, including attorney's fees, provided that the arbitrator shall be free to award attorney's fees and other costs as part of any award, to the extent such an award is permitted by applicable law.

12.    **Discovery.**  The parties shall be entitled to engage in discovery in the form of requests for documents, interrogatories, requests for admission, physical and/or mental examinations, and depositions. All discovery shall be completed within ninety (90) days after the appointment of the arbitrator(s). All discovery is subject to the following restrictions:

    a.    Each side will be limited to no more than three (3) depositions. No side may examine or cross-examine an individual witness for more than six (6) hours. Breaks during depositions do not count against this limitation.

    b.    Each side shall be limited to a total of thirty (30) discovery requests of any kind, including sub-parts, except as otherwise mutually agreed to by the parties or as ordered by the arbitrator. By way of example, a deposition would constitute one (1) discovery request; each specific request for a category of documents is an additional request; and each individual interrogatory is one (1) discovery request.

    c.    Depositions of corporate representatives shall be limited to no more than three (3) designated topics.

    d.    At a mutually agreeable date, or if no agreement, at a time set by the arbitrator, the parties shall exchange lists of experts who will testify at the arbitration

hearing. Each side may depose the other side's experts, and obtain the documents they reviewed and relied upon, and these depositions will not be charged to the parties' aggregate limit on discovery requests or the three (3) deposition limit.

e. To obtain discovery of data or information that exists in electronic or magnetic form, the requesting party must specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced. Subject to any objections, the responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business. If the responding party cannot – through reasonable efforts – retrieve the data, the responding party must state an objection to the arbitrator. If the arbitrator orders the responding party to comply with the request, the arbitrator must also order that the requesting party pay the reasonable expenses of any extraordinary steps required to retrieve and produce the information. In no event shall such discovery be ordered if the arbitrator believes that the cost of producing the information exceeds the total likely recovery in the case.

f. If either party requests in discovery financial, proprietary, or other information of the other that the responding party believes to be confidential, the arbitrator shall be fully empowered to enter any protective orders deemed necessary to protect the confidentiality of such information upon application for confidential treatment by the responding party.

g. If either party requests documents or information (the "Requesting Party") that the other party objects to producing or disclosing by virtue of a claim of the attorney-client privilege, the work-product privilege, or any other applicable privilege (the "Asserting Party"), the hearing arbitrator shall initially attempt to determine the application of the privilege without the necessity of an in camera inspection. If the hearing officer orders the documents or information disclosed (thus overruling the privilege), prior to disclosure, the Asserting Party shall have the right to appeal such determination to a Third-Party Arbitrator (as defined below). Also, if an in camera inspection is required, at the request of the Asserting Party, it shall be conducted by the Third-Party Arbitrator, not the hearing arbitrator. Whenever any Asserting Party shall request the appointment of a Third-Party Arbitrator, the hearing arbitrator shall immediately notify the arbitration agency, who shall, as expeditiously as possible, appoint a neutral Third-Party Arbitrator of its choice to perform the in camera inspection or hear the appeal from the overruling of the asserted privilege, as the case may be (such person as appointed is herein called the "Third-Party Arbitrator"). As expeditiously as possible, the Third-Party Arbitrator shall make his/her ruling and inform the hearing arbitrator whether said materials are privileged or should be produced/disclosed, and if produced or disclosed, whether it should be produced in redacted form, or curtailed in some way, as determined in the sole judgment of the Third-Party Arbitrator. To the extent the Third-Party Arbitrator determines that certain documents and/or information is privileged, such shall not be produced or disclosed to the Requesting Party or provided to the hearing arbitrator

without the Asserting Party's consent. The Third-Party Arbitrator's decisions and rulings shall be final and binding on the hearing arbitrator and the parties. If such dispute arises during the arbitration hearing, the hearing arbitrator shall make the determination whether to proceed and allow the results of the Third-Party Arbitrator to be received later, or whether justice requires that the arbitration hearing be continued pending the determination by the Third-Party Arbitrator. This subparagraph shall apply notwithstanding any other provision to the contrary in this Agreement.

h.   All discovery disputes shall be resolved exclusively by the arbitrator or the Third-Party Arbitrator as described above. There shall be a presumption against increasing the amount of discovery beyond what is provided for herein, except that the arbitrator may increase or modify the amount of discovery upon a showing of good cause by the moving party.

13.   **Pre-Hearing Matters; Matters Regarding the Arbitration Hearing, Etc.**

a.   *Pre-Hearing Conferences.* At the arbitrator's discretion or at either party's request, the arbitrator or the AAA may provide notice and hold conferences before the official hearing begins to discuss and decide any matters that will expedite the hearing, including: (i) clarification of the issues, including but not limited to, motions for a more definitive statement of the claims; (ii) determination of preliminary issues, including dispositive legal issues; (iii) discovery issues; (iv) the time and location of the hearings or conferences; (v) pre- or post-hearing memoranda; (vi) stipulations; and (vii) encouraging settlements. Subject to the arbitrator's discretion, pre-hearing conferences may be conducted by telephone, video conference, or written submission.

b.   *Pre-Hearing Motions.* The arbitrator may hear and grant a motion for a more definitive statement of the claims, motion to dismiss, a motion to compel discovery (subject to Section 12), and/or a motion for summary judgment. In ruling on any such motions, the arbitrator shall apply the standards governing such motions under the Texas Rules of Civil Procedure and applicable Texas case law, to the extent such standards exist.

c.   *Date, Time, and Place of Hearing.* The arbitration hearing will be held at a location within fifty (50) miles of the Covered Employee's last place of employment with the Company, unless agreed otherwise. The Company shall be financially responsible for the arbitrator's travel and also reasonable hearing-room accommodations. The arbitration hearing shall occur within 120 days of the selection of the arbitrator, unless the arbitrator, for good cause, shall grant a continuance thereof, in which case the hearing shall occur as soon thereafter as possible.

d.   *Attendees at Hearing.* The arbitrator shall maintain the privacy of the arbitration hearings. No one may attend the hearings without the agreement of all parties, except (i) the parties themselves (in the case of a natural person, this includes the

spouse of the natural person; if the party is a corporation, it includes up to two (2) corporate representatives); (ii) counsel (including in-house counsel) for all parties; and (iii) any person whose presence is shown by a party to be essential to the presentation of the party's cause.

e.   *Time of Award.*  The arbitrator shall use his or her best efforts to render a decision within thirty (30) days from the later of the closing of the hearing, the date of the last post-hearing brief, or the closing of a reopened hearing, unless agreed otherwise.

f.   *Form of Award.*  The arbitrator may award any relief permitted by applicable law. Any arbitration decision will be in writing and signed by the arbitrator in the form customarily used in employment arbitrations. The written decision will include the reasons for the decision (including findings of fact and conclusions of law) and the precise award or remedy granted, if any.

14.   **Agreed Statute of Limitations, Required Compliance with Federal or State Deadlines, Etc.**

a.   All Claims must be brought within the time allowed by the applicable statute of limitations, provided that no claim may be brought after one (1) year of the date that the Covered Employee's employment with the Company ceased. However, if a specific remedial statute provides for a longer limitations period and the arbitrator determines that to limit the time to a period shorter than that provided by statute would be illegal or unconscionable under applicable law, then the statutory time limitation shall be enforced by the arbitrator.

b.   Each Covered Employee must comply with the applicable deadlines for filing a charge of discrimination with any federal, state, or local agency (such as the Equal Employment Opportunity Commission, Texas Commission on Human Rights, or other comparable commission). Filing such a charge is a prerequisite to filing a claim under this Agreement for any claim in which the applicable law requires a charge to be filed with a federal, state, or local commission, body, or agency.

15.   **Class Action Prohibition.**  The arbitrator shall not consolidate claims of different employees into one (1) proceeding, nor shall the arbitrator have the authority to consider, certify, or hear an arbitration as a class action. While Section 22 hereof contains a severability clause, this provision that precludes class actions may not be severed from this Agreement for any reason.

16.   **Applicable Law and Arbitrator's Authority.**  This Agreement shall be construed, governed by, and enforced in accordance with the laws of the State of Texas (except where specifically stated otherwise herein), except that for claims or defenses arising under federal law, the arbitrator shall follow the substantive law as set forth by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. The arbitrator does not have the authority to enlarge, add to, subtract from, disregard, or

arbitrator does not have the authority to enlarge, add to, subtract from, disregard, or otherwise alter the parties' rights under such laws, except to the extent set forth herein. The parties recognize that the Company operates in many states in interstate commerce. Therefore, it is acknowledged and agreed that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*, shall govern this Agreement and the arbitration.

17. **Interim and Equitable Relief.**  The arbitrator has authority to issue all temporary injunctive relief and/or other equitable or emergency relief permissible under Texas law. Prior to the selection of an arbitrator, any party may apply for interim or equitable relief to a court of law, provided that after selection of an arbitrator, such arbitrator shall have complete authority to modify, rescind, cancel, or change, in whole or in part, any actions taken by any court, unless same is forbidden by applicable law.

18. **Sanctions.**  The arbitrator shall have the power to award sanctions for failure by either a party or their counsel to comply with this Agreement or with an order of the arbitrator. These sanctions may include, but are not limited to, assessment of costs, including attorney's fees, prohibition of evidence, or, if justified by wanton or willful disregard of this Agreement or the arbitrator's order(s), an adverse ruling in the arbitration against the party who has failed to comply.

19. **Enforcement.**  Any dispute concerning this Agreement — the way it was formed, its applicability, meaning, scope, enforceability, or any claim that all or part of this Agreement is void or voidable — is subject to arbitration under this Agreement and shall be determined by the arbitrator.  Any award rendered under this Agreement, including without limitation, awards of equitable and/or injunctive relief, may be enforced by any court of competent jurisdiction.

20. **Not an Employment Agreement.**  This Agreement is not, and shall not be construed to create, any contract of employment, express or implied, nor shall this Agreement be construed in any way to change the status of any Covered Employee from at-will status. The parties can each end the employment relationship with the other at anytime for any reason, with or without cause.  The arbitrator has no authority to alter the at-will nature of any employee's employment with the Company.

21. **Term, Modification, and Revocation.**  This Agreement to arbitrate shall survive the termination of the employer-employee relationship between the Company and any Covered Employee, and shall apply to any covered Claim whether it arises or is asserted during or after termination of the Covered Employee's employment with the Company or the expiration of any benefit plan.  This Agreement can be amended, modified, or revoked in writing by the Company at anytime, but only upon thirty (30) days' advance notice to the Covered Employee of that amendment, modification, or revocation. However, any amendment, modification, or revocation will have no effect on any Claim that was filed for arbitration prior to the effective date of such amendment, modification, or revocation.

22.     **Severability.**  Subject to the provisions of Section 15, if any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, then as to the Covered Employees in the state where the court making such determination is located, the offending provision shall be severed from the remainder of the Agreement and the rest of the Agreement shall be effective.  As to all other Covered Employees in other states, however, any such provision shall not be severed or affected by such determination.  If any court determines that this Agreement in its entirety shall not be enforced, such determination shall be effective only as to Covered Employees who reside in the state where such court is located, and not as to any other Covered Employees, as to whom this Agreement shall continue and be valid and enforceable.

23.     **Sole and Entire Agreement.**  This Agreement constitutes the sole and entire agreement of the parties on the subject of arbitration of disputes.  This Agreement supersedes any prior or contemporaneous oral or written agreements or understandings between the parties on the subject.

# EXHIBIT C

# THE NEIMAN MARCUS GROUP, INC.
## MANDATORY ARBITRATION AGREEMENT
## ASSOCIATE ACKNOWLEDGEMENT FORM

By signing below, I acknowledge and affirm that:

I have received and had an opportunity to review the NMG Mandatory Arbitration Agreement (the "Arbitration Agreement");

I understand that the Arbitration Agreement is an **important legal document** that requires me to submit all complaints, disputes, and legal claims ("Disputes") I have against the Company, and the Company to submit **all Disputes** it has against me, to **binding arbitration**;

I understand that the Arbitration Agreement means both I and the Company are **waiving the right to a trial by jury or to a trial before a judge** in a court of law on all Disputes. Instead, all Disputes must be submitted to final and binding arbitration;

I understand that the Arbitration Agreement is **not optional**. Rather, it is **mandatory** and a condition and term of my employment if I am employed or continue employment on or after July 15, 2007.

EMPLOYEE: _____

PRINTED NAME: _____

PIN: _____

DATE: _____

*Please complete this acknowledgement form and return it to your Human Resource Office.*

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 550-2007-01751 |

**California Department of Fair Employment & Housing** _and EEOC_

_State or local Agency, if any_

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Tayler Bayer | (415) 377-4978 | 06-21-1965 |

| Street Address | City, State and ZIP Code |
|---|---|
| 625 22nd Street, Apartment B, Oakland, CA 94612 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| NEIMAN MARCUS | 500 or More | (415) 362-3900 |

| Street Address | City, State and ZIP Code |
|---|---|
| 150 Stockton Street, San Francisco, CA 94103 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☒ AGE  ☒ DISABILITY  ☒ OTHER *(Specify below.)*

**Equal Pay**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                 Latest
                         07-09-2007

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working for Respondent in March 2006. My current job title is Cosmetic Sales Associate. On June 20, 2007, I received a copy of Neiman Marcus Groups' Mandatory Arbitration Agreement for review and signature. Respondent instructed me sign and submit the Agreement no later than July 15, 2007. This Agreement unlawfully limits my civil rights, including having the following illegal provisions:

1.) a prohibition on class actions;
2.) a one year statute of limitations;
3.) a limit of three depositions with the company preserving its right to bring a summary judgment motion;
4.) a requirement that all arbitrators be members of the Texas Bar; and
5.) that federal law claims be governed by the Fifth Circuit.

I believe that myself and others are being required to sign this Agreement by Respondent in violation of Title VII of the Civil Rights Act of 1964, a as amended, the Age Discrimination in Employment Act of 1967, as amended, the Equal Pay Act of 1963, as amended, and the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 7-9-07 _____ _Tayler Bayer_<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



INTERNET
FORM NLRB-501
(6-07)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

FORM EXEMPT UNDER 44 U.S.C 3512

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
File an original together with four copies and a copy for each additional charged party named in item 1 with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|
| a. Name of Employer<br>Neiman Marcus | | b. Number of workers employed<br><br>> 200 |
| c. Address (Street, city, state, and ZIP code)<br>150 Stockton Street<br>San Francisco, CA 94103 | d. Employer Representative<br>Marita O'Dea, Sr. VP<br>Chief Human Resources Officer | e. Telephone No.<br>415 362 3900 (HR)<br>Fax No.<br>415 249 2756 (HR fax) |
| f. Type of Establishment (factory, mine, wholesaler, etc.)<br>Retail | g. Identify principal product or service<br>Cosmetics, clothing, accessories | |

h.   The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1)
and (list subsections)   section 7                                                                    of the National Labor Relations Act, and these
unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting
commerce within the meaning of the Act and the Postal Reorganization Act.

2.   Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

On June 20, 2007, I received a copy of Neiman Marcus's Mandatory Arbitration Agreement ("Agreement"). The Agreement states,
"This Agreement for Mandatory Arbitration is Not Optional." I was told to sign and submit the Agreement no later than July 15,
2007. I was told if I did not sign and submit the Agreement, I would be deemed to have consented to the Agreement by merely
continuing my employment. The Agreement is an unfair labor practice pursuant to NLRA sections 7 and 8(a)(1) as it prohibits
consolidation of claims and class actions. Section 15 of the Agreement states: "Class Action Prohibition. The arbitrator shall not
consolidate claims of different employees into one (1) proceeding, nor shall the arbitrator have the authority to consider, certify or
hear an arbitration as a class action. While Section 22 hereof contains a severability clause, this provision that precludes class actions
may not be severed from this Agreement for any reason." (Attached hereto is a copy of the Neiman Marcus, Inc. Mandatory
Arbitration Agreement.)

3.   Full name of party filing charge (if labor organization, give full name, including local name and number)
     Tayler Bayer

| 4a. Address (Street and number, city, state, and ZIP code)<br>625 22nd Street, Apt. B<br>Oakland, CA 94612 | 4b. Telephone No.<br>415 377 4978<br>Fax No.<br>N/A |
|---|---|

5.   Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor
organization) N/A

| 6. DECLARATION | | |
|---|---|---|
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | |
| By _____<br>(signature of representative or person making charge)<br>McGuinn, Hillsman & Palefsky<br>Address 535 Pacific Ave., San Francisco, CA  94133 | Cliff Palefsky<br>(Print/type name and title or office, if any) | |
| | (fax)  415-403-0202<br>415.421.9292<br>(Telephone No.) | 7.15.07<br>(date) |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)



INTERNET
FORM NLRB-501
(6-07)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

FORM EXEMPT UNDER 44 U.S.C 3512

**FIRST AMENDED   CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 20-CA-33510 | Date Filed |

**INSTRUCTIONS:**
File an original together with four copies and a copy for each additional charged party named in item 1 with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Neiman Marcus | | b. Number of workers employed<br><br>> 200 |
|---|---|---|
| c. Address *(Street, city, state, and ZIP code)*<br>150 Stockton Street<br>San Francisco, CA 94103 | d. Employer Representative<br>Marita O'Dea, Sr. VP<br>Chief Human Resources Officer | e. Telephone No.<br>415 362 3900 (HR)<br>Fax No.<br>415 249 2756 (HR fax) |
| f. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Retail | g. Identify principal product or service<br>Cosmetics, clothing, accessories | |

h.    The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)*   section 7 _____ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

On June 20, 2007, I received a copy of Neiman Marcus's Mandatory Arbitration Agreement ("Agreement"), a copy of which is attached. The Agreement states, "This Agreement for Mandatory Arbitration is Not Optional." I was told to sign and submit the Agreement no later than July 15, 2007. I was told if I did not sign and submit the Agreement, I would be deemed to have consented to the Agreement by merely continuing my employment. The Agreement is an unfair labor practice pursuant to NLRA sections 7 and 8(a)(1) as it prohibits consolidation of claims and class actions. Section 15 of the Agreement states: "Class Action Prohibition. The arbitrator shall not consolidate claims of different employees into one (1) proceeding, nor shall the arbitrator have the authority to consider, certify or hear an arbitration as a class action. While Section 22 hereof contains a severability clause, this provision that precludes class actions may not be severed from this Agreement for any reason."

The Mandatory Arbitration Agreement applies to nearly all of Neiman Marcus' employees on a nation-wide basis and therefore also violates Section 8(a)(1) as it applies to those other employees.

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*<br>Tayler Bayer | |
|---|---|
| 4a. Address *(Street and number, city, state, and ZIP code)*<br>625 22nd Street, Apt. B<br>Oakland, CA 94612 | 4b. Telephone No.<br>415 377 4978<br>Fax No.<br>N/A |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* N/A

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _(signature of representative or person making charge)_   Cliff Palefsky _(Print/type name and title or office, if any)_

McGuinn, Hillsman & Palefsky

Address 535 Pacific Avenue, San Francisco, CA 94133

*(fax)* 415-403-0202

415 421-9292 _(Telephone No.)_   10/2/07 _(date)_

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 550-2009-02340 |

**California Department Of Fair Employment & Housing** and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Tayler Bayer | (415) 377-4978 | 06-21-1965 |

| Street Address | City, State and ZIP Code |
|---|---|
| 237 Kearney St. #129, San Francisco, CA 94108 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| NEIMAN MARCUS | 500 or More | |

| Street Address | City, State and ZIP Code |
|---|---|
| 150 Stockton St, San Francisco, CA 94108 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| | 08-31-2009 |

☒ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

| 09-03-09 | *Tayler M Bayer* |
|---|---|
| Date | Charging Party Signature |

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

# EEOC CHARGE OF TAYLER BAYER

I began working for Respondent in March 2006.  On June 8, 2007, I requested a reasonable accommodation for my disability.  Respondent failed to grant me a reasonable accommodation and retaliated against me.  On June 20, 2007, I filed my first charge with the EEOC for disability discrimination and retaliation, which set forth the particulars of that charge.

On June 20, 2007, while my first charge for disability discrimination and retaliation was still pending with the EEOC, Respondent presented me with a copy of their Mandatory Arbitration Agreement and instructed me to sign and submit it no later than July 15, 2007.  The Mandatory Arbitration Agreement had numerous illegal provisions that unlawfully limited my civil rights under Title VII, the ADEA, the EPA, and the ADA.  Therefore, on July 7, 2007, I filed a new charge for discrimination under those statutes (i.e., race, sex, age, disability, and equal pay discrimination).  At the time I filed the July 7, 2007 charge, my June 20, 2007 charge for disability discrimination and retaliation was still pending with the EEOC .

On January 12, 2009, Respondent notified me that I was being laid off.  Respondent told me I was eligible for re-hire..  However, since my lay-off, Respondent has been interviewing candidates for positions selling products I previously sold for Respondent.  Respondent also has hired new employees to sell products I previously sold for Respondent.  Plainly, these are positions that I am qualified to fill.  I believe Respondent is continuing to discriminate against me and is retaliating against me for filing my two prior charges, all in violation of the ADA, Title VII, the ADEA, and the EPA.

Tayler M Bayer
08-21-09