UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLER BAYER,<br><br>        Plaintiff,<br><br>    v.<br><br>NEIMAN MARCUS GROUP, INC.,<br><br>        Defendant. | Case No. 13-cv-04487-MEJ<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 28, 34 |

## I. INTRODUCTION

Plaintiff Tayler Bayer alleges that his former employer, Defendant Neiman Marcus Group, Inc. ("NMG"), wrongfully interfered with his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Pending before the Court are the parties' cross-motions for summary judgment. Pl.'s Mot. for Summ. J. ("PMSJ"), Dkt. No. 28; Def.'s Mot. for Summ. J. ("DMSJ"), Dkt. No. 34. The Court previously found this matter suitable for disposition without oral argument. Dkt. No. 43. For the reasons set forth below, the Court finds that there no longer exists a present controversy between the parties as to which effective relief can be granted. Accordingly, the case is moot, and the Court GRANTS NMG's Motion and DENIES Bayer's Motion.

## II. BACKGROUND

Bayer filed this lawsuit under section 503(b) of the ADA, 42 U.S.C. § 12203(b), after NMG allegedly interfered with the exercise of his rights under the ADA. NMG is a national retailer of luxury goods and operates a chain of high-end retail department stores. Bayer joined an NMG store in March 2006 as an at-will employee. Def.'s Statement of Undisputed Facts ("DSUF") ¶ 1, Dkt. No. 34-1; Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 1, Dkt. No. 30. He

1     worked in the Cosmetics Department of the San Francisco store and worked a regular schedule of
2     five days per week, six hours per day.  DSUF ¶ 2; PSUF ¶ 5.
3         In March 2007, Bayer took FMLA leave after he was diagnosed with the medical condition
4     emphysema.  DSUF ¶ 3; PSUF ¶ 6; Bayer Decl., Dkt. No. 31, ¶ 4 & Ex. A.  Bayer's physician
5     allowed Bayer to return to work effective June 1, 2007, but restricted him to working no more than
6     four days per week.  DSUF ¶ 4; PSUF ¶¶ 7-9; Bayer Decl. ¶ 4 & Exs. A-C.  A dispute, which is
7     not the subject of this lawsuit, arose between the parties about whether NMG failed to reasonably
8     accommodate Bayer's disability/medical condition as required by the ADA.  *See* DSUF ¶¶ 5, 6;
9     PSUF ¶¶ 10-13; Bayer Decl. ¶ 5.  In response, Bayer filed an administrative complaint with the
10    EEOC for his reasonable accommodation charge on June 20, 2007.  Bayer Decl. Ex. D ("EEOC
11    Charge #1").  In October 2007, the EEOC issued a right-to-sue letter for Bayer's EEOC Charge
12    #1, and Bayer brought suit against NMG in January 2008 (*Tayler Bayer v. Neiman Marcus
13    Holdings, Inc.*, N.D. Cal. Case No. CV-08-0480-PJH) ("Lawsuit #1").  The parties later settled
14    that case in April 2008.  Palefsky Decl. ¶ 4, Dkt. No. 32.
15        The events giving rise to this case occurred around the time Bayer filed his administrative
16    complaint on EEOC Charge #1 on June 20, 2007.  Specifically, on June 20, 2007, Bayer received
17    in the mail a notice from NMG that it was adopting an alternative dispute resolution program
18    called "NMG Resolutions."  DSUF ¶¶ 7; 9; PSUF ¶ 15; *see also* Bayer Decl. Ex. E (the
19    "Arbitration Agreement"); Ex. F (the "Arbitration Agreement Acknowledgment Form"); Ex. G
20    (NMG Resolutions: A 4-Step Process "NMG 4-Step"); Ex. H (Frequently Asked Questions
21    relating to the Arbitration Agreement).  NMG Resolutions established a four-step dispute
22    resolution process, under which employees first discussed their issue with local Human Resources,
23    then presented it to the corporate Associate Relations Department, then went on to mediation and,
24    as the last step, proceeded to arbitration.  DSUF ¶ 8.  As noted, the package also included a
25    Mandatory Arbitration Agreement, which described the terms of the final and binding arbitration
26    process.  DSUF ¶ 9; PSUF ¶¶ 17, 18.
27        Employees were to sign the Arbitration Agreement Acknowledgement Form indicating
28    that they received the package and understood the legal significance of those documents.  DSUF ¶

12; *see also* Bayer Decl. Ex. F.  Additionally, throughout the Arbitration Agreement and the accompanying documents, NMG expressly and repeatedly informed employees that arbitration was mandatory: any employee who continued to be employed by NMG on or after July 15, 2007 would be automatically deemed to have accepted the Arbitration Agreement and be bound by it. DSUF ¶ 11; PSUF ¶¶ 17-19; *see also* Bayer Decl. Exs. E-H.

Bayer refused to sign the Acknowledgment Form or any other arbitration documents. DSUF ¶ 25; PSUF ¶ 27; Bayer Decl. ¶¶ 9-10, 13-14, & Ex. L.  In response to NMG's mailing, on July 9, 2007, Bayer filed a second ADA charge with the EEOC ("EEOC Charge #2")—the charge that gave rise to this lawsuit—which alleged that NMG interfered with his rights in violation of section 503(b) of the ADA by pressuring him to choose between his job and his ADA rights. PSUF ¶ 26; Bayer Decl. ¶ 13 & Ex. K.  Bayer did not resign from NMG and continued working for NMG after July 15, 2007.  DSUF ¶¶ 27, 28; PSUF ¶ 29; Bayer Decl. ¶¶ 15, 16.  The EEOC's investigation into Bayer's EEOC Charge #2 continued for several years.  Palefsky Decl. ¶ 5.  On June 30, 2009, almost two years after Bayer filed EEOC Charge #2, the EEOC issued a Determination Letter that found "reasonable cause" to believe that through its Mandatory Arbitration Agreement NMG discriminated against Bayer based on his protected status under federal employment laws.  Palefsky Decl. ¶ 5 & Ex. D.  The EEOC did not issue a right-to-sue letter until July 2013, six years after Bayer filed EEOC Charge #2.  PSUF ¶ 41; Bayer Decl. ¶ 19 & Ex. Q; Palefsky Decl. ¶ 5.  Bayer then filed the present lawsuit in September 2013 (Lawsuit #2), alleging that NMG's insistence that he choose between quitting his job and being bound by its Arbitration Agreement violated section 503(b) of the ADA.  Bayer Decl. ¶ 19; Palefsky Decl. ¶ 5; *see also* Compl., Dkt. No. 1.  Bayer alleges a single cause of action: that NMG attempted to "coerce, intimidate or threaten" him in the exercise of ADA rights in violation of 42 U.S.C. § 12203(b).  Compl. ¶¶ 28-44.  In addition to damages, he seeks a declaration that the Arbitration Agreement is "unlawful, invalid and unenforceable" and an injunction to prohibit NMG from coercing employees to waive ADA rights.  Compl. at 23.

NMG terminated Bayer's employment in January 2009, and Bayer responded by filing a third EEOC charge in August 2009, alleging that NMG had retaliated against him for filing and

pursuing his EEOC claims, lawsuits, and an unfair labor practice charge with the National Labor Relations Board. PSUF ¶¶ 30, 33; Bayer Decl. Ex. O ("EEOC Charge #3"); Palefsky Decl. ¶ 3. In April 2011, the EEOC issued a right-to-sue letter with respect to EEOC Charge #3. PSUF ¶ 34; Bayer Decl. ¶ 18 & Ex. P; Palefsky Decl. ¶ 6. Bayer filed his third lawsuit in July 2011, alleging that NMG had wrongfully terminated him in violation of the ADA's anti-retaliation provisions. *Tayler Bayer v. Neiman Marcus Group, Inc.*, N.D. Cal. Case No. CV-11-03705-MEJ ("Lawsuit #3"); Bayer Decl. ¶ 18; DSUF ¶ 41; PSUF ¶ 35.

In Lawsuit #3, NMG filed a Motion to Compel Arbitration. Palefsky Decl. ¶ 7. In November 2011, this Court denied the motion on the ground that Bayer had never consented to be bound by the arbitration agreement. *Id.*; DSUF ¶ 42. NMG appealed, and the Ninth Circuit affirmed. *Bayer v. Neiman Marcus Holdings, Inc.*, 582 F. App'x 711, 714 (9th Cir. 2014) (Thomas, McKeown, Kendall, JJ.). Bayer's wrongful termination case (Lawsuit #3), thus remains pending.

### III.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

1    If the moving party meets its initial burden, the opposing party must then set forth specific
2 facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ.
3 P. 56(e); *Anderson*, 477 U.S. at 250.  It is not the task of the Court to scour the record in search of
4 a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court
5 "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that
6 precludes summary judgment." *Id.*; *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017
7 (9th Cir. 2010).  Thus, "[t]he district court need not examine the entire file for evidence
8 establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with
9 adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified*
10 *Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this
11 showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323
12 (internal quotations omitted).

## IV.  DISCUSSION

Bayer argues that he is entitled to summary judgment because NMG violated section 503(b) of the ADA by coercing, intimidating, threatening, and interfering with Bayer's exercise of protected ADA rights through its mandatory arbitration agreement.  However, NMG asserts that this case can be dismissed as moot because the Ninth Circuit affirmed this Court's ruling that the parties did not enter into an arbitration agreement, meaning Bayer no longer needs injunctive or declaratory relief.  And because section 503 provides only equitable remedies, NMG asserts there is no other relief this Court can award Bayer.

Bayer concedes that he no longer needs an injunction.  *See* Pl.'s Opp'n to DMSJ, Dkt. No. 36 ("Pl.'s Opp'n") at 11.  But he disputes that that the Ninth Circuit's decision has mooted this case.  Bayer asserts that NMG's argument rests on "the false assumption" that Bayer's lawsuit challenges nothing more than the validity and enforceability of NMG's arbitration agreement and argues that he instead seeks specific relief under section 503(b) of the ADA.  He contends that the issue is not whether the employer's arbitration agreement was enforceable but whether NMG's efforts to force Bayer to choose between either quitting his job or agreeing to be bound by that restrictive agreement, constitutes the type of coercion, threats, intimidation, or interference that

Congress intended to proscribe in section 503(b). Pl.'s Opp'n at 3. Bayer also asserts that he incurred expenses and suffered distress as a result of NMG's statutory violations. Pl.'s Opp'n at 5; PMSJ at 6-7. He argues that these harms and the continuing dispute over whether NMG's conduct was prohibited by section 503(b) establish a live case or controversy between the parties. Bayer asserts he is entitled (1) to declaratory judgment that NMG violated section 503(b) by insisting that he choose between his job and his full exercise and enjoyment of ADA rights, and (2) to compensation for the harms he suffered as a result of NMG's unlawful conduct.

Because NMG's mootness challenge under Article III implicates the Court's subject matter jurisdiction, the Court addresses this threshold issue first.[1] *See Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).

**A.    Legal Standard**

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987)); *see also United States v. Juvenile Male*, 131 S.Ct. 2860, 2864 (2011) (per curiam). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted). Federal courts are thus prohibited from rendering advisory opinions; they cannot divine on "abstract dispute[s] about the law." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009). Whether "the dispute between the parties was very much alive when suit was filed . . . cannot substitute for the actual case or controversy that an exercise of this [c]ourt's jurisdiction requires." *Honig v. Doe*, 484 U.S. 305, 317 (1988). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (citation omitted). In other words, if

---

[1] NMG also asserts that Bayer lacks standing under Article III; however, as the Court finds Bayer's claim in this case moot, the Court need not address NMG's standing argument.

1    events subsequent to the filing of the case resolve the parties' dispute, the Court must dismiss the
2    case as moot. *Pitts*, 653 F.3d at 1087.
3        "The basic question is whether there exists a present controversy as to which effective
4    relief can be granted." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir.
5    2007) (citation omitted). "If there is no longer a possibility that [a defendant] can obtain relief for
6    his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of
7    Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). The available remedy, however, does not need to
8    be "fully satisfactory" to avoid mootness; rather the availability of even a "partial remedy" is
9    sufficient to prevent a case from being moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996).
10   NMG has the burden of establishing mootness. *See Ctr. For Biological Diversity v. Lohn*, 511
11   F.3d 960, 963 (9th Cir. 2007).

**B.  Application to the Case at Bar**

As the parties agree that Bayer no longer seeks injunctive relief, the Court will focus its analysis on whether Bayer's claims for damages and declaratory relief establish a present controversy on which effective relief can be granted. Bayer claims that he is entitled to compensatory damages, nominal damages, restitution, legal fees, and declaratory judgment. The Court addresses each claim in order below.

    1.  <u>Compensatory Damages</u>

Both parties acknowledge that a request for damages incurred in the past can establish a live case or controversy to overcome a mootness challenge. DMSJ at 7; Pl.'s Opp'n at 11-12 (both citing *Outdoor Media Grp.*, 506 F.3d at 902 (recognizing same)). Bayer asserts that NMG's unlawful interference caused Bayer to incur costs and medical expenses. Pl.'s Opp'n at 5, 11-12. NMG argues that Bayer is not entitled to these damages as he seeks relief solely under section 503(b), which affords him only equitable relief, not compensatory damages.

A Title I ADA plaintiff who prevails under section 503(a) or (b) of the ADA, 42 U.S.C. § 12203, is entitled to the remedies specified in 42 U.S.C. § 12117. *See* 42 U.S.C. § 12203(c). Section 12117 incorporates the remedies of 42 U.S.C. § 2000e-5(g)(1). Section 2000e-5(g)(1), however, does not provide for compensatory damages:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e-5(g)(1).

Congress expanded the remedies available under 42 U.S.C. § 2000e-5 by providing for punitive and compensatory damages in 42 U.S.C. § 1981a. Section 1981a(a)(2) names numerous statutory provisions for which it expanded the section 2000e-5 remedies, but absent from this provision is any reference to section 503, 42 U.S.C. § 12203:

> In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

42 U.S.C. § 1981a(a)(2).

The Ninth Circuit recently considered whether compensatory and punitive damages are available for ADA retaliation claims and concluded that they are not. *See Alvarado v. Cajun Operating Co.*, 588 F.3d 1261 (9th Cir. 2009). The Ninth Circuit adopted the Seventh Circuit's reasoning in *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961 (7th Cir. 2004), finding

United States District Court
Northern District of California

8

1  "the plain and unambiguous provisions of 42 U.S.C. § 1981a limit the availability of
2  compensatory and punitive damages to those specific ADA claims listed [and] ADA retaliation is
3  not on the list." *Alvarado*, 588 F.3d at 1269-70. Therefore, "ADA retaliation claims are
4  redressable only by equitable relief" as specified in 42 U.S.C. § 2000e-5(g)(1). *Id.* at 1270.

In a footnote, Bayer urges the Court to read *Alvarado*'s holding on compensatory damages as dicta, arguing that *Alvarado* never specifically mentions section 503(b) (it only mentions section 503(a)). This argument is unpersuasive. The Ninth Circuit adopted the reasoning of *Kramer*, which states unambiguously that "[b]ecause claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims." *Kramer*, 355 F.3d at 965. Given this statement, the Court has no reason to believe that the Ninth Circuit's analysis would not apply equally to section 503(b) as it does to section 503(a), both of which use section 503(c) to establish their available remedies. *See also U.S. E.E.O.C. v. Dillard's Inc.*, 2012 WL 440887, at *10 n.11 (S.D. Cal. Feb. 9, 2012) (recognizing that "the Ninth Circuit has held that the damages provision of 42 U.S.C. § 1981a does not allow for compensatory and punitive damages for ADA claims of retaliation under § 12203.").

Bayer also argues that Congress did not intend to strip section 503 plaintiffs of their right to recover compensatory damages. However, the Ninth Circuit has already addressed the argument and ultimately rejected the invitation to read more into section 1981a than what is available by its plain text. *See Alvarado*, 588 F.3d at 1267-68 & n.6. In light of the Ninth Circuit's holding in *Alvarado*, the Court cannot find that Bayer is entitled to compensatory damages in this case.[2] As a result, Bayer's claim for compensatory damages does not establish a live case or controversy to overcome NMG's mootness challenge.

2.  Nominal Damages

Next, Bayer argues that he is entitled to nominal damages, citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002); *Parton v. GTE, Inc.*, 971 F.2d 150, 154 (8th Cir. 1992); and *Poland v. Chertoff*, 559 F. Supp. 2d 1127, 1131

---

[2] *Compare Herrera v. Giampietro*, 2010 WL 1904827, at *9 (E.D. Cal. May 10, 2010) (distinguishing *Alvarado* and refusing to dismiss plaintiff's ADA retaliation claim on the ground that compensatory damages are available against public entities).

United States District Court
Northern District of California

1  (D. Or. 2008). Bayer is correct that the Ninth Circuit has held that "[a] live claim for nominal
2  damages will prevent dismissal for mootness," *Bernhardt*, 279 F.3d at 872, and the Supreme Court
3  has held that nominal damages are available to vindicate the deprivations of "certain absolute
4  rights," such as the right to procedural due process. *Carey*, 435 U.S. at 266. However, Bayer has
5  not established that nominal damages are available in section 503 claims, and the cases Bayer cites
6  do not concern nominal damages under the ADA: *Bernhardt* and *Carey* both involve
7  constitutional violations brought under 42 U.S.C. § 1983. Likewise, while *Poland* involved
8  claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., the court found
9  that these claims were based on the defendant's retaliation for assertion of his constitutional and
10 civil rights not to be discriminated against based on age. *Poland*, 559 F. Supp. 2d at 1131.
11 Finally, *Parton* involves a different underlying cause of action (a sexual harassment claim in a
12 Title VII action) in another Circuit. 971 F.2d at 154; *see also discussion in Salitros v. Chrysler*
13 *Corp.*, 306 F.3d 562, 575 (8th Cir. 2002) (recognizing that courts have consistently held that
14 nominal damages are available for violations of *constitutional* rights but concluding that nominal
15 damages were not available in section 503 claims); *but compare Shaver v. Indep. Stave Co.*, 350
16 F.3d 716, 725 (8th Cir. 2003) (finding plaintiff would have a claim for nominal damages on a
17 section 503 claim). As the Ninth Circuit held in *Alvarado* that only equitable relief is available for
18 section 503 violations, the Court cannot find that nominal damages are available for this claim.

19      3.    Restitution

20  Bayer argues that he is entitled to equitable relief in the form of restitution for out-of-
21 pocket medical and legal expenses. Pl.'s Reply to DMSJ at 7, Dkt. No. 40. In support, Plaintiff
22 cites *Simpson v. Office of Thrift*, 29 F.3d 1418, 1423-24 (9th Cir. 1994). Bayer is correct that
23 monetary remedies can be restitutionary and therefore equitable (*see Simpson*, 29 F.3d at 1423-
24 24); but he has not shown that the money he seeks is restitutionary. A court must look "to the
25 substance of the remedy sought, . . . rather than the label placed on that remedy." *Reynolds Metals*
26 *Co. v. Ellis*, 202 F.3d 1246, 1248 (9th Cir. 2000) (citation omitted); *see also Mertens v. Hewitt*
27 *Assocs.*, 508 U.S. 248, 255 (1993) ("Although they often dance around the word, what petitioners
28 in fact seek is nothing other than compensatory *damages* . . . .") (emphasis in original).

10

"[F]or restitution to lie in equity, the action generally must seek . . . to restore to the plaintiff particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). "The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me." *Nickel v. Bank of Am. Nat. Trust & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002) (citing American Law Institute, *Restatement of Restitution* § 1 (1937)); *see also Black's Law Dictionary* 1315 (9th ed. 2009) (defining restitution as recovery based on "unjust enrichment" or "defendant's gain"). There is no indication here that NMG was somehow unjustly enriched or profited from its alleged interference with the exercise of Bayer's ADA rights. Nor has Bayer shown that his out-of-pocket medical or legal expenses are somehow otherwise restitutionary in nature. Bayer has presented no other theories about why he is entitled to restitution. While restitution may be available in some cases, there is no evidence it is available in this case. Accordingly, the Court cannot find that Bayer is entitled to restitution here.

### 4. Legal Fees

Bayer next asserts that he is entitled to legal fees incurred as a result of NMG's challenged conduct. *See* 42 U.S.C. § 12205 (permitting courts to allow the "prevailing party" to recover "a reasonable attorney's fee, including litigation expenses, and costs"). However, "[t]he existence of an attorneys' fees claim . . . does not resuscitate an otherwise moot controversy." *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996) (citing *Diamond v. Charles*, 476 U.S. 54, 70-71 (1985)); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (noting that "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"); *see also M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 857 (9th Cir. 2014) (noting that an exception to the mootness doctrine exists where a claimant would suffer "collateral legal consequences," but finding a plaintiff's attempt to recover prevailing party attorneys' fees does not meet that exception). Instead, "[t]he litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.").

11

### 5. Declaratory Judgment

The ultimate question then is whether Bayer's request for declaratory relief presents a live case or controversy under Article III. "When presented with a claim for a declaratory judgment, therefore, federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (citing *Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244 (1952) ("The disagreement [underlying the declaratory relief action] must not be nebulous or contingent but must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.")). "To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (citation and quotation marks omitted).

"A case or controversy exists justifying declaratory relief only when 'the challenged [] activity . . . has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1989) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014). The issue then is whether the allegedly wrongful behavior could reasonably be expected to recur.

According to Bayer, the issue in this case is whether *"*Neiman Marcus's alleged efforts to force Bayer to choose between either quitting his job or agreeing to be bound by that restrictive agreement, constitutes the type of coercion, threats, intimidation, or interference that Congress intended to proscribe in Section 503(b)." Opp'n at 3 (emphasis omitted). Bayer's arguments, however, do not address NMG's contention that this allegedly wrongful behavior is not likely to

12

recur—in other words, that the Ninth Circuit's determination that the arbitration agreement is not binding on Bayer removes any likelihood Bayer could again be placed in the position of choosing between his job or accepting the arbitration agreement. NMG argues that the issue of whether NMG can enforce its agreement on Bayer was fully and fairly litigated between the parties in Lawsuit #3 and its re-litigation is precluded by collateral estoppel. *See* Def.'s Opp'n at 6.

Bayer has not shown how declaratory judgment serves any useful purpose at this point. His claim in Lawsuit #1 (the reasonable accommodation suit) has been settled, and thus is no longer subject to a dispute over arbitration. In Lawsuit #3, the wrongful termination suit, the Ninth Circuit has confirmed that he is not subject to NMG's arbitration agreement, likewise removing any future dispute over arbitration. Additionally, Bayer is no longer an employee with NMG and made no claims for reinstatement in either this lawsuit or in Lawsuit #3, so there is no indication that he would again be forced to choose between working with NMG or agreeing to arbitration.[3] Without any evidence or argument that Bayer might be threatened with the former arbitration agreement and that it is somehow binding on Bayer, or that Bayer could again be pressured to choose between his livelihood and NMG's arbitration agreement, the Court cannot see how declaratory judgment could provide him with any effective relief at this point. At this point, no "live" controversy remains between the parties because the challenged activity has "evaporated or disappeared." *Headwaters*, 893 F.2d at 1015.

6. <u>No Effective Relief Can Be Granted</u>

Although the Court agrees that a live controversy existed between the parties when Bayer filed this case, the subsequent events and changed factual circumstances here have made this case moot. *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 82 F. Supp. 2d 1070, 1079 (D. Ariz. 2000) (refusing to grant a declaratory judgment that the Forest Service was in violation of the Endangered Species Act, or order the Forest Service to engage in consultation, because the Forest Service had already reinitiated consultation and there was no other relief the Court could grant); *Lohn*, 511 F.3d at 964 (9th Cir. 2007) (finding moot plaintiff's claim for declaratory

---

[3] Bayer did not bring this case as a class action.

13

judgment because the Court could provide no meaningful relief after defendant ceased the challenged activity); *Rosebrock*, 745 F.3d at 970 (9th Cir. 2014) (government's voluntary cessation of allegedly unlawful practice mooted plaintiff's request for injunctive relief); *see also Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (no remaining case or controversy where plaintiff's request for declaratory judgment would not redress plaintiff's injury); *cf. Pac. Rivers Council v. Thomas*, 873 F. Supp. 365, 370 (D. Idaho 1995) (finding dispute over Endangered Species Act consultation requirement not moot because "the agency only initiated consultation after being ordered to" by the Ninth Circuit); *see also Al-Farook v. Marina Dist. Dev. Co., LLC*, 2013 WL 6177933, at *3 (D.N.J. Nov. 25, 2013) (finding that because plaintiffs' rights were no longer threatened and they did not seek reinstatement, there was no reasonable expectation they would be subjected to the same action again). As there is no longer a present controversy as to which effective relief can be granted, this case is moot and must be dismissed.

## VI.  CONCLUSION

Based on the analysis above, the Court hereby GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: January 22, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge