**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TAYLER BAYER,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>NEIMAN MARCUS GROUP, INC.,<br>*Defendant-Appellee.* | No. 15-15287<br><br>D.C. No.<br>3:13-CV-04487-MEJ<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Maria-Elena James, United States Magistrate Judge,
Presiding

Argued and Submitted February 13, 2017
San Francisco, California

Filed June 26, 2017

Before: William A. Fletcher and Johnnie B. Rawlinson,
Circuit Judges, and Robert W. Pratt,* District Judge.

Opinion by Judge Pratt

---

* The Honorable Robert W. Pratt, United States District Judge for the
Southern District of Iowa, sitting by designation.

2          BAYER V. NEIMAN MARCUS GROUP

## SUMMARY[**]

### Labor Law

The panel reversed the district court's order granting summary judgment on mootness grounds to the defendant in a suit alleging interference with the plaintiff's exercise of his rights under the Americans with Disabilities Act in violation of 42 U.S.C. § 12203(b).

The panel concluded that the district court had the power to award the plaintiff only equitable remedies under § 12203(b).

The plaintiff sought an injunction prohibiting the defendant, his former employer, from attempting to coerce, intimidate, or threaten employees into waiving their rights under the Americans with Disabilities Act by consenting to be bound to an arbitration agreement. In another case, the court had held that the arbitration agreement was not binding on the plaintiff. The panel held that the claim for injunctive relief was moot because the plaintiff had neither shown that he was reasonably likely to be subjected once again to the conduct alleged as the basis for his claim nor shown that he could reasonably be expected to benefit from the injunctive relief he sought.

The panel held that the plaintiff's claims for equitable monetary relief and for a declaration that the arbitration

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

agreement was unlawful, invalid, and unenforceable also were moot.

The panel reversed the district court's ruling that nominal damages were not available to the plaintiff because they were only a legal remedy. The panel held that nominal damages may be awarded as an equitable remedy under § 12203. The panel therefore reversed the district court order finding the case moot and granting summary judgment to the defendant, and remanded for further proceedings.

## COUNSEL

Cliff Palesfsky (argued) and Keith Ehrman, McGuinn Hillsman & Palefsky, San Francisco, California; Michael Rubin, Altshuler Berzon LLP, San Francisco, California; for Plaintiff-Appellant.

Dylan B. Carp (argued), Conor Dale, and Mitchell Boomer, Jackson Lewis, San Francisco, California; Katrin U. Schatz, Jackson Lewis, Dallas, Texas; for Defendant-Appellee.

## OPINION

PRATT, District Judge:

Plaintiff-Appellant Tayler Bayer appeals from a district court order granting summary judgment on mootness grounds to his former employer, Defendant-Appellee Neiman Marcus Group, Inc. (Neiman Marcus), in a suit alleging interference with the exercise of his rights under the Americans with Disabilities Act (ADA) in violation of 42 U.S.C. § 12203(b). For the reasons that follow, we reverse and remand for further proceedings.

### I. Factual Background

Neiman Marcus owns and operates a chain of retail department stores that sell luxury goods. From March 2006 to January 2009, Bayer was employed by Neiman Marcus in the cosmetics department of its store in San Francisco, California. Bayer filed three charges with the Equal Employment Opportunity Commission (EEOC) stemming from events related to his employment with Neiman Marcus, each alleging a distinct violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Each of these charges eventually became the basis for a separate lawsuit. The present appeal concerns only one of these suits, but determining whether that action is moot requires an examination of the relationship among them.

Neiman Marcus hired Bayer in March 2006. At first, Bayer worked five days per week for six hours per day, and Neiman Marcus considered him to be a full-time employee entitled to certain benefits not available to employees working fewer than thirty hours per week. About one year

after Bayer was hired, however, he took medical leave because he was suffering from emphysema. Months later, Bayer's physician authorized his return to work but restricted him to working no more than four days per week. Neiman Marcus provided a scheduling accommodation, but a dispute arose between the parties concerning its reasonableness, as it would have caused Bayer to lose his full-time employee status. In June 2007, Bayer filed a charge of discrimination with the EEOC alleging Neiman Marcus had failed to reasonably accommodate his disability in violation of the ADA.

Events that took place around the time Bayer filed his first charge with the EEOC formed the basis for his second one. In June 2007, Neiman Marcus mailed packages to its employees notifying them that it had adopted an alternative dispute resolution program. Each package included a memorandum indicating Neiman Marcus had implemented a "mandatory conflict resolution program" for all its employees and a booklet setting forth in detail the terms of its new "mandatory arbitration agreement." These documents expressly stated the new arbitration agreement was not optional but required as a condition of continued employment with Neiman Marcus after July 15, 2007. They further stated that any employee who continued employment with Neiman Marcus on or after July 15, 2007, would be deemed to have accepted the arbitration agreement.

Neiman Marcus provided employees with forms by which they were to acknowledge that the arbitration agreement was a mandatory condition of their continued employment. Bayer informed Neiman Marcus that he refused to sign an acknowledgment form or otherwise agree to be bound by the arbitration agreement. Bayer believed that being bound by

the agreement would cause him to lose various rights afforded him under the ADA, including rights related to the then-pending reasonable-accommodation charge he had filed with the EEOC. He thus filed a second charge with the EEOC in July 2007, alleging that Neiman Marcus was unlawfully interfering with his ADA rights by requiring him to agree to be bound by the arbitration agreement as a condition of his continued employment. The date on which the arbitration agreement was to become a mandatory condition of employment with Neiman Marcus passed, and Bayer maintained his refusal to be bound by the arbitration agreement yet continued to work for Neiman Marcus.

Months later, in October 2007, the EEOC issued Bayer a right-to-sue letter regarding the discrimination charge alleging Neiman Marcus had failed to reasonably accommodate his disability in violation of the ADA. Thereafter, in January 2008, Bayer filed his first suit against Neiman Marcus. *See Bayer v. Neiman Marcus Holdings, Inc.*, No. 4:08-CV-00480-PJH (N.D. Cal. dismissed Apr. 9, 2008). The parties ultimately settled their underlying dispute, however, and the reasonable-accommodation suit was dismissed in April 2008.

Throughout the duration of the first suit Bayer filed against Neiman Marcus, the EEOC investigation into the second charge Bayer had filed alleging unlawful interference with his ADA rights continued. In January 2009, while that investigation was still ongoing, Neiman Marcus terminated Bayer. Bayer subsequently filed a third charge with the EEOC in August 2009, alleging Neiman Marcus had terminated him in retaliation for his opposition to its unlawful conduct in violation of the ADA. In April 2011, the EEOC issued Bayer a right-to-sue letter in connection with the

retaliation charge, and Bayer filed his second suit alleging retaliatory discharge against Neiman Marcus in July 2011. *See Bayer v. Neiman Marcus Group, Inc.*, No. 3:11-CV-03705-MEJ (N.D. Cal. dismissed June 2, 2015). In November 2011, the district court denied a motion to compel arbitration filed in that suit by Neiman Marcus on the ground that Bayer had never consented to be bound by the arbitration agreement. *Bayer v. Neiman Marcus Holdings, Inc.*, No. 3:11-CV-03705-MEJ, 2011 WL 5416173, at *7 (N.D. Cal. Nov. 8, 2011). Neiman Marcus filed an interlocutory appeal of the district court ruling.

In July 2013, while the interlocutory appeal in the retaliatory-discharge suit was pending, the EEOC issued Bayer a right-to-sue letter in connection with his allegation that Neiman Marcus had unlawfully interfered with his ADA rights, more than six years after Bayer filed his second charge of discrimination.[1] Bayer then filed this suit alleging Neiman Marcus unlawfully interfered with his ADA rights by requiring him to consent to be bound by the arbitration agreement as a condition of his continued employment. *Bayer v. Neiman Marcus Grp., Inc.*, No. 3:13-CV-04487-MEJ (N.D. Cal. filed Sept. 27, 2013). In his complaint, Bayer sought damages, attorney fees and costs, an injunction prohibiting Neiman Marcus from attempting to intimidate employees and potential employees into waiving their ADA rights, a declaration that the mandatory arbitration agreement

---

[1] Though Bayer did not receive his right-to-sue letter until July 2013, the EEOC had apparently concluded its investigation years earlier. In June 2009, the EEOC issued a determination concluding there was "reasonable cause" to believe Neiman Marcus had discriminated against Bayer and other former, current, and future employees based on their protected status by subjecting them to the mandatory arbitration agreement.

is unenforceable, and such other relief as the district court deemed proper.

In July 2014, this Court affirmed the district court ruling in the retaliatory-discharge suit that the arbitration agreement was not binding as to Bayer. *See Bayer v. Neiman Marcus Holdings, Inc.*, 582 F. App'x 711, 714 (9th Cir. 2014). Thereafter, the district court hearing this action granted summary judgment in favor of Neiman Marcus and dismissed the action as moot, concluding "there no longer exists a present controversy between the parties as to which effective relief can be granted." Bayer timely appealed the final judgment of the district court.

## II. Standard of Review

We review a district court grant of summary judgment de novo. *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016 (9th Cir. 2012). We likewise review a district court decision regarding subject matter jurisdiction de novo. *Id.* We therefore review de novo the district court decision granting summary judgment and dismissing this action for mootness. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 (9th Cir. 1998).

## III. Discussion

Article III of the United States Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *See* U.S. Const. art. III, § 2, cl. 1.

> The case or controversy requirement, which constitutes "the irreducible constitutional minimum of standing," requires that a

> plaintiff show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) (citation omitted) (first quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); then quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). "The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (citing *Burke v. Barnes*, 479 U.S. 361, 363, 107 S. Ct. 734, 93 L. Ed. 2d 732 (1987)). Because the power of a federal court to decide the merits of a claim ordinarily evaporates whenever a prerequisite to standing disappears, the doctrine of mootness has been described as "the doctrine of standing set in a time frame." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Ruiz*, 160 F.3d at 549 (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)).

The party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). An action "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, ___, 133 S. Ct. 1017, 1023, 185 L. Ed. 2d 1 (2013) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, ___, 132 S. Ct. 2277, 2287, 183 L. Ed. 2d 281 (2012)) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992)). "The question is not whether the precise relief sought at the time the case was filed is still available," but "whether there can be any effective relief." *McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015) (alteration omitted) (quoting *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 559 (9th Cir. 2009)).

## A. Available Remedies

Because mootness turns on the ability of the district court to award effective relief, we first consider the question of what remedies were available to Bayer. In this action, Bayer alleges Neiman Marcus violated § 12203(b) of the ADA. Section 12203(b) provides,

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or

encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).

Section 12203(c) provides that the procedures and remedies available to redress § 12203(b) violations include those available under 42 U.S.C. §§ 12117, 12133, and 12188, the enforcement provisions contained within Titles I, II, and III of the ADA, respectively. *See id.* § 12203(c). Each of these sections in turn references the procedures and remedies set forth in other statutes. *See id.* §§ 12117, 12133, 12188. Whereas §§ 12133 and 12188 address ADA enforcement in the context of public services and public accommodations, § 12117 addresses ADA enforcement in the employment context. Thus, to determine the remedies available to an individual alleging an employer interfered with his or her ADA rights in violation of § 12203, we turn to § 12117. *See Alvarado v. Cajun Operating Co*., 588 F.3d 1261, 1264 (9th Cir. 2009).

Rather than explicitly setting forth the precise procedures and remedies available thereunder, § 12117 references 42 U.S.C. §§ 2000e-4 through 2000e-9, provisions contained within Title VII of the Civil Rights Act of 1964. Among those provisions is the primary enforcement provision in Title VII, 42 U.S.C. § 2000e-5(g), which authorizes any court that finds a defendant engaged in an unlawful employment practice to "enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or

without back pay . . . , or any other equitable relief as the court deems appropriate."

Prior to the enactment of the Civil Rights Act of 1991, Title VII of the Civil Rights Act of 1964 authorized courts to award only equitable remedies. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 252, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). With the enactment of the Civil Rights Act of 1991, Congress expanded the remedies available to redress certain Title VII violations, making available compensatory and punitive damages in actions brought under § 2000e-5(g). *See Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1068 (9th Cir. 2005); *see also* 42 U.S.C. § 1981a(a)(1). In the same act, Congress made available compensatory and punitive damages in the context of disability claims brought under specified sections of the ADA. *Alvarado*, 588 F.3d at 1264; *see* 42 U.S.C. § 1981a(a)(2). Because Congress did not specify in the act that such damages were to be available in the context of ADA claims brought under § 12203, this Court held that such claims remain "redressable only by equitable relief" in *Alvarado*, 588 F.3d at 1264–70.[2]

---

[2] The Fourth and Seventh Circuits have also concluded that § 12203 claims are redressable only by equitable relief. *See Kramer v. Banc of Am. Securities, LLC*, 355 F.3d 961, 965–66 (7th Cir.), *cert. denied*, 542 U.S. 932, 124 S. Ct. 2876, 159 L. Ed. 2d 798 (2004); *Rhoads v. FDIC*, 94 Fed. App'x 187, 188 (4th Cir. 2004) (per curiam) (unpublished). Though no other circuit has expressly held to the contrary, we note the Eighth Circuit appears to have twice assumed without deciding that damages constitute an available remedy for claims brought under § 12203. *See Salitros v. Chrysler Corp.*, 306 F.3d 562, 574–76 (8th Cir. 2002); *Foster v. Time Warner Entm't Co., L.P.*, 250 F.3d 1189, 1198 (8th Cir. 2001).

In light of *Alvarado*, the parties agree that the district court had the power to award Bayer only equitable remedies.[3] Furthermore, because Bayer concedes that *Alvarado* constrains the remedies available to him to equitable remedies, he does not challenge the district court's conclusion that his request for compensatory damages is insufficient to save this action from mootness.

## B. Analysis

Bayer argues this action is not moot because the district court had discretion to award him any one of several forms of effective equitable relief. In determining whether a requested remedy constitutes equitable relief, we look to the substance or character of the remedy sought, not the label placed upon it. *See Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1248 (9th Cir. 2000) (quoting *FMC Med. Plan v. Owens*, 122 F.3d 1258, 1261 (9th Cir. 1997) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)).

## 1. Injunctive Relief

Injunctive relief constitutes a traditional equitable remedy. *Mertens*, 508 U.S. at 255. In the complaint, Bayer sought an injunction prohibiting Neiman Marcus "from attempting to coerce, intimidate or threaten employees (or potential employees) into waiving their rights under the ADA" and such other relief as the district court deemed appropriate. In opposing summary judgment, however, Bayer conceded he no longer required an injunction to prevent

---

[3] Bayer concedes the district court was bound by *Alvarado*'s central holding and acknowledges that a panel of this court cannot overturn it.

Neiman Marcus from insisting he is bound by the arbitration but failed to explicitly argue that another form of injunctive relief would be effective relief.  Bayer now contends it was within the power of the district court to require Neiman Marcus to place a letter in his personnel file stating that no attempt to enforce the arbitration agreement should be made in the event he should seek future employment with Neiman Marcus or in any future litigation between the parties. Neiman Marcus claims Bayer effectively waived his claim for injunctive relief and that such relief would serve no purpose in any event, given that the company is bound to comply with the district court ruling that the arbitration agreement does not bind Bayer.

A plaintiff may waive a claim for injunctive relief by failing to argue its merits at summary judgment.  *See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 n.9 (9th Cir. 1986).  Nevertheless, we need not determine whether Bayer effectuated a waiver of his entire claim for injunctive relief here, as we conclude it cannot satisfy the case or controversy requirement embedded in Article III.

"A request for injunctive relief remains live only so long as there is some present harm left to enjoin."  *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)).  Thus, a claim for injunctive relief becomes moot once subsequent events have made clear the conduct alleged as the basis for the requested

relief "could not reasonably be expected to recur." *Ruiz*, 160 F.3d at 549 (quoting *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1009 (9th Cir. 1978)). A plaintiff who cannot be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364–65, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (concluding plaintiffs whose employment ended after an action was filed had no claim for injunctive relief against their former employer concerning its employment practices); *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1036–37 (9th Cir. 2006) (concluding a plaintiff requesting an injunction requiring her former employer to adopt and enforce lawful policies "lacked standing to sue for injunctive relief from which she would not likely benefit").

With respect to his request for an injunction directing Neiman Marcus to place a letter in his personnel file, Bayer has provided no evidence to indicate Neiman Marcus could reasonably be expected to attempt to enforce the arbitration agreement against him or to coerce his acceptance of it in the future. A plaintiff's declaration of intent as to his own future conduct *may* be sufficient to "establish a reasonable expectation that he will be subjected to the same action or injury again." *Wolfson v. Brammer*, 616 F.3d 1045, 1054–55 (9th Cir. 2010). But absent any indicia of concreteness, such a declaration is insufficient to support a finding that an actual or imminent injury exists. *See Lujan*, 504 U.S. at 564. While it is conceivable that Bayer could file a lawsuit against or seek employment with Neiman Marcus in the future, he has neither declared his intent to do so nor produced any other evidence suggesting the conduct alleged as the basis for his claim can reasonably be expected to recur as to him.

With respect to the request for an injunction prohibiting Neiman Marcus from attempting to intimidate its employees and potential employees into waiving their ADA rights, Bayer has produced no evidence to show he can reasonably be expected to benefit from such relief. A former employee currently seeking to be reinstated or rehired may have standing to seek injunctive relief against a former employer. *See Walsh*, 471 F.3d at 1036–37. But a former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief. *See Dukes*, 564 U.S. at 364–65; *see also Walsh*, 471 F.3d at 1036–37. Given that Bayer is no longer employed with Neiman Marcus and has produced no evidence to suggest he plans to seek employment with Neiman Marcus again, there is no basis upon which to conclude he has a reasonably certain need for prospective relief pertaining to its future employment practices.

Because Bayer has neither shown that he is reasonably likely to be subjected once again to the conduct alleged as the basis for his claim nor shown that he can reasonably be expected to benefit from the injunctive relief he seeks, we conclude his claim for injunctive relief is moot.

### 2. Monetary Reimbursement

"A monetary award can be either legal or equitable in nature." *Dep't of Treasury-I.R.S. v. Fed. Labor Relations Auth.*, 521 F.3d 1148, 1155 n.4 (9th Cir. 2008). Bayer argues the district court could have awarded him equitable monetary relief to reimburse medical expenses he incurred seeking treatment for anxiety and legal costs he incurred attempting to preserve both his ADA rights and his job. Neiman Marcus

argues the district court properly determined that within the context of this action, such relief would not constitute equitable relief.

As a general rule, monetary relief constitutes a legal remedy. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990); *Smith v. Barton*, 914 F.2d 1330, 1337 (9th Cir. 1990). However, monetary relief may be characterized as equitable when it possesses attributes meriting an exception to the general rule. *See Terry*, 494 U.S. at 570–71; *Smith*, 914 F.2d at 1337. It is well established that such attributes may be present in two contexts. *See Terry*, 494 U.S. at 570–71; *Smith*, 914 F.2d at 1337.

First, a monetary award that is restitutionary in nature may be legal or equitable depending on the circumstances in which it is awarded. *See Terry*, 494 U.S. at 570; *Smith*, 914 F.2d at 1337; *see also Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1237–38 (9th Cir. 2003) (distinguishing between legal and equitable restitutionary awards). Monetary restitution is appropriately characterized as equitable when it is intended "to restore to the plaintiff particular funds . . . in the defendant's possession." *Foster*, 332 F.3d at 1237 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)). But monetary restitution is appropriately characterized as legal in actions that simply seek to impose general personal liability on a defendant for money allegedly owed to the plaintiff. *Id.* at 1238.

Second, a monetary award may be equitable when it is merely incidental to or intertwined with injunctive relief.

*Terry*, 494 U.S. at 571; *Smith*, 914 F.2d at 1337. To illustrate, money damages in the form of back pay are equitable when awarded as a complement to, rather than in addition to and distinct from, injunctive reinstatement. *See Smith*, 914 F.2d at 1337; *see also Terry*, 494 U.S. at 571–73. Along the same lines, money damages in the form of front pay are equitable when awarded in lieu of injunctive reinstatement. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 849–51, 853, 121 S. Ct. 1946, 150 L. Ed. 2d 62 (2001). In contrast, an award of money damages to compensate for reputational injury, mental anguish, emotional distress, or loss of job responsibilities constitutes a legal remedy. *See Tamosaitis v. URS Inc.*, 781 F.3d 468, 487 (9th Cir. 2015); *Smith*, 914 F.2d at 1337.

The monetary reimbursement Bayer seeks cannot fairly be characterized as merely incidental to or intertwined with injunctive relief, as he has no claim for such relief. Nor can it be said to possess the attributes of equitable restitution, as Bayer does not argue that Neiman Marcus possesses particular funds that rightly belong to him. Instead, Bayer forthrightly seeks reimbursement from Neiman Marcus on the theory that concrete financial losses he suffered as a consequence of its allegedly unlawful conduct should rightly be restored to him. In light of the restorative theory upon which Bayer seeks reimbursement of his medical expenses and legal costs, there is no other basis upon which the district court might have had the power to award him such relief in equity.

To the extent Bayer suggests the district court could have exercised its equitable power to make him whole by awarding him money to reimburse medical expenses and legal costs he incurred due to unlawful conduct, such monetary relief is

properly characterized as compensatory damages, the classic form of legal relief. *See F.A.A. v. Cooper*, 566 U.S. 284, 307, 132 S. Ct. 1441, 182 L. Ed. 2d 497 (2012) (acknowledging that "compensatory damages . . . compensate the injured party for the injury sustained . . . such as will . . . replace the loss caused by the wrong or injury" (quoting *Black's Law Dictionary* (rev. 4th ed. 1968))); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) (describing compensatory damages as being "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct" (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001))); *see also Mertens*, 508 U.S. at 250–51, 255. Consequently, the district court lacked the power to award such damages in this action brought under § 12203. *See Alvarado*, 588 F.3d at 1264–70.

To the extent Bayer suggests his interest in attorney fees and legal costs associated with this action is sufficient to avoid mootness, it has long been established that such costs standing alone are insufficient to confer Article III jurisdiction "where none exists on the merits of the underlying claim." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).  Rather, a case or controversy sufficient to confer Article III jurisdiction exists only when succeeding in the litigation will afford "the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Id.*

The monetary award Bayer sought to reimburse his medical expenses and legal costs constituted legal damages

the district court lacked the power to award in this action. We therefore conclude his claim for such monetary relief is moot.

### 3. Declaratory Judgment

In the complaint, Bayer sought a declaration that the arbitration agreement is unlawful, invalid, and unenforceable. In opposing summary judgment before the district court, however, Bayer sought only a declaration that Neiman Marcus violated § 12203(b) by insisting that he choose between his job and the exercise of his ADA rights. Bayer now contends the district court erred in concluding it lacked the power to issue such relief. Neiman Marcus counters that the district court was powerless to issue a declaration that it violated § 12203(b), as under the circumstances of this case a declaration to that effect could in no way affect the relationship between the parties and would have been merely advisory.

"A particular declaratory judgment draws its equitable or legal substance from the nature of the underlying controversy." *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1251 (9th Cir. 1987) (citing *Wallace v. Norman Indus.*, 467 F.2d 824, 827 (5th Cir. 1972); *Pacific Indem. Co. v. McDonald*, 107 F.2d 446, 448 (9th Cir. 1939)). Assuming without deciding that the declaratory relief Bayer sought was truly equitable in nature, we conclude his claim for declaratory relief is nonetheless moot.

Some claims seeking a declaratory judgment satisfy Article III's case or controversy requirement, and others do not. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007). "A case or

controversy exists justifying declaratory relief only when 'the challenged . . . activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the . . . parties.'" *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1098–99 (9th Cir. 2001) (quoting *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1989). Thus, the test for mootness applied to a claim for declaratory relief "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)); *S. California Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1035 (9th Cir. 2009) (quoting *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007)). "Stated another way, the central question . . . is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *S. California Painters*, 558 F. 3d at 1035 (quoting *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc)).

Bayer argues a declaratory judgment would be meaningful under the circumstances of this case because it would vindicate his rights and make him the prevailing party in this action. However, a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction. *See, e.g., Green v. Mansour*, 474 U.S. 64, 74, 106 S. Ct. 423, 88 L. Ed. 2d 371

(1985). The "value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S. Ct. 2672, 96 L. Ed. 2d 654 (1987) (emphasis in original). Bayer has provided no basis upon which to conclude declaratory relief might affect Neiman Marcus's behavior towards him. At present, the arbitration agreement does not bind Bayer, the parties have no relationship beyond this litigation, and there is no evidence to suggest Bayer can reasonably be expected to work for or bring suit against Neiman Marcus in the future. The mere fact that securing a declaratory judgment would permit Bayer to recoup costs associated therewith is insufficient, standing alone, to create an Article III case or controversy where none otherwise exists. *See Steel Co.*, 523 U.S. at 107.

Bayer argues that even if *he* is no longer subjected to Neiman Marcus's alleged unlawful conduct, his claim for declaratory relief is not moot because the relief sought pertains to an ongoing policy. But to avoid mootness with respect to a claim for declaratory relief on the ground that the relief sought will address an ongoing policy, the plaintiff must show that the policy "has adversely affected and continues to affect a present interest." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125–26, 94 S. Ct. 1694, 40 L. Ed. 2d 1 (1974); *accord Carver Middle Sch. Gay-Straight All. v. Sch. Bd.*, 842 F.3d 1324, 1330 (11th Cir. 2016); *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 930–33 (7th Cir. 2013); *Sapp v. Renfroe*, 511 F.2d 172, 175–76 (5th Cir. 1975); *Nieves v. Oswald*, 498 F.2d 802, 814 (2d Cir. 1974). The mere existence of an ongoing policy is insufficient to establish that a plaintiff challenging that policy

has standing to attack all its future applications.  *See City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429–30 (D.C. Cir. 1994); *see also Dukes*, 564 U.S. at 365.

Because Bayer has produced no evidence to show the conduct complained of in this action presently affects him or can reasonably be expected to affect him in the future, *see Helms*, 482 U.S. at 761, we conclude the circumstances prevailing since he filed this action have forestalled any occasion to award him meaningful declaratory relief, *see S. California Painters*, 558 F. 3d at 1035.   We therefore conclude his claim for declaratory relief is moot.

### 4. Nominal Damages

"A live claim for nominal damages will prevent dismissal for mootness."  *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002).[4]  In light of our holding in *Alvarado* that § 12203 claims are redressable only by equitable relief, the district court ruled that nominal damages are unavailable to Bayer in this action.   Bayer contends the district court erroneously assumed that the nominal damages he seeks necessarily constitute legal, not equitable, relief.   In response, Neiman Marcus argues that nominal damages are, like other money damages, quintessentially legal, yet concedes that

---

[4] A majority of the circuits acknowledge that a live claim for nominal damages ordinarily saves a case from dismissal on mootness grounds.  *See Ermold v. Davis*, 855 F.3d 715, 719 (6th Cir. 2017); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 & n.32 (5th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 187 (4th Cir. 2009); *Adv. Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 803 (8th Cir. 2006); *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257–58 (10th Cir. 2004); *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986).  *But see DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1259 (11th Cir. 2007).

such damages may constitute equitable relief under limited circumstances.

When invoked to avoid mootness, a claim for nominal damages not explicitly stated in the complaint bears close inspection to ensure it does not fail as a matter of law. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 71, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997); *McKinley v. Kaplan*, 177 F.3d 1253, 1255–56 (11th Cir. 1999) (discussing *Arizonans* and *Fox v. Board of Trustees of SUNY*, 42 F.3d 135 (2d Cir. 1994), *cert. denied*, 515 U.S. 1169, 115 S. Ct. 2634, 132 L. Ed. 2d 873 (1995)). Though Bayer did not state a separate claim for nominal damages in his complaint, he asserted a claim for damages and a general prayer for such other relief as the district court deemed proper. But Bayer explicitly argued he was entitled to nominal damages in opposing summary judgment before the district court.

This is not a case in which the defendant lacked notice that damages were sought until the plaintiff attempted to wrest a claim for nominal damages from a general prayer for relief for the first time on appeal. *See Seven Words*, 260 F.3d at 1098–99. Moreover, assuming nominal damages may be awarded as equitable relief in the context of a § 12203 action, there is no other basis upon which to conclude the nominal damages claim Bayer now asserts is not viable as a matter of law. *See McKinley*, 177 F.3d at 1255–56; *see also Fisher v. Univ. of Texas at Austin*, 758 F.3d 633, 640 (5th Cir. 2014), *aff'd*, 136 S. Ct. 2198 (2016) (concluding the United States Supreme Court necessarily determined the plaintiff had standing to pursue nominal damages when it remanded the case with instructions because the Court had an "independent obligation to confirm jurisdiction" and the issue had been "squarely presented" on appeal); *id.* at 663 n.3 (Garza, J.,

dissenting) (acknowledging that the basis for standing presented to the Court was the plaintiff's claim for nominal damages and that the complaint included a prayer for damages and a general prayer for relief but lacked a specific prayer for nominal relief); *cf. Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011) (recognizing that the term "damages" is ambiguous such that "it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three"). We therefore conclude our determination as to whether Bayer had a viable claim for nominal damages sufficient to avoid mootness turns on the question of whether nominal damages may be awarded under § 12203.

Only one court of appeals has squarely addressed this question. In *Shaver v. Independent Stave Co.*, 350 F.3d 716 (8th Cir. 2003), the Eighth Circuit held that a plaintiff who baited his employer into violating § 12203(a) but could prove no consequential damages had an actionable claim for nominal damages. *Id.* at 723–25. In reaching this conclusion, the court relied upon the purposes Congress intended the ADA to serve—namely, protecting the dignitary interests of individuals with disabilities and enlisting the aid of private citizens in the enforcement of public policy. *See id.* at 724–25.

*Shaver*'s persuasive power in the context of this appeal is significantly undermined by the context in which it was decided, however. By the time *Shaver* was decided, the Eighth Circuit had twice assumed that the damages remedies set forth in § 1981a are available to remedy § 12203 violations. *See Salitros v. Chrysler Corp.*, 306 F.3d 562, 575 (8th Cir. 2002); *Foster v. Time Warner Entm't Co., L.P.*, 250 F.3d 1189, 1198 (8th Cir. 2001). It is therefore unclear

whether the decision rests on an unspoken premise that conflicts with our holding in *Alvarado*. Namely, if the *Shaver* court assumed that legal remedies are available to redress § 12203 violations, it had no occasion to address whether or not it considered the nominal damages at issue to be equitable—the fundamental prerequisite to awarding such damages in a § 12203 action in this circuit under *Alvarado*.

Though it appears no other court of appeals has explicitly addressed whether nominal damages may be awarded to redress § 12203 violations, numerous decisions of our sister circuits offer guidance on the broader question of whether nominal damages may be awarded in equity under § 2000e-5(g) to remedy violations of statutory rights. Prior to the enactment of both the ADA and the Civil Rights Act of 1991, the First, Fourth, Eighth, Tenth, and Eleventh Circuits acknowledged that nominal damages may be awarded under § 2000e-5. *See Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905 (11th Cir. 1988); *Maney v. Brinkley Mun. Waterworks & Sewer Dep't*, 802 F.2d 1073, 1076 (8th Cir. 1986); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986); *Katz v. Dole*, 709 F.2d 251, 253 n.1 (4th Cir. 1983); *Dean v. Civiletti*, 670 F.2d 99, 101 (8th Cir. 1982) (per curiam); *T & S Serv. Assocs., Inc. v. Crenson*, 666 F.2d 722, 728 & n.8 (1st Cir. 1981); *see also Joshi v. Florida State Univ.*, 646 F.2d 981, 991 n.33 (5th Cir. Unit B June 1981).[5] At that time, Title VII authorized courts to award only equitable remedies. *Landgraf*, 511 U.S. at 252; *Lutz*, 403 F.3d at 1068.

---

[5] As Unit B of the Fifth Circuit later became the Eleventh Circuit, the list of circuits that concluded nominal damages may be awarded under § 2000e-5 prior to the passage of the ADA and the Civil Rights Act of 1991 excludes the Fifth Circuit.

In 1986, the Seventh Circuit became the first to conclude that nominal damages cannot be awarded under § 2000e-5, reasoning simply that "as currently written Title VII does not contemplate damages." *Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1184 (7th Cir. 1986). In subsequent decisions following its lead, the Fifth and Tenth Circuits reached the same conclusion, though well after Congress enacted the ADA. *Griffith v. State of Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994); *Landgraf v. USI Film Prod.*, 968 F.2d 427, 431 (5th Cir. 1992), *aff'd on other grounds*, 511 U.S. 244 (1994).

Presently, then, the First, Fourth, Eighth, and Eleventh Circuits recognize § 2000e-5 as authorizing nominal damages awards, whereas the Seventh, Fifth, and Tenth Circuits do not.[6] Decisions issued in the latter circuits subsequent to *Bohen* reflect a shared underlying premise—that nominal damages necessarily constitute legal, and not equitable, relief. *See Griffith*, 17 F.3d at 1327; *Landgraf*, 968 F.2d at 431; *Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235, 1240 (7th Cir. 1989), *overruled on other grounds in Saxton v. Am. Tel. & Tel., Co.*, 10 F.3d 526, 533 n.12 (7th Cir. 1993). However, we have identified no case in this line of authority that has examined this premise thoroughly.

---

[6] District court decisions concluding that nominal damages may not be awarded under § 2000e-5 have also been affirmed by the First and Third Circuits, but only in non-precedential summary dispositions issued after the enactment of the Civil Rights Act of 1991. *See Jackson & Coker, Inc. v. Lynam*, 840 F. Supp. 1040, 1053 (E.D. Pa. 1993), *aff'd mem.*, 31 F.3d 1172 (3d Cir. 1994); *Afanador v. U.S. Postal Serv.*, 787 F. Supp. 261, 269–74 (D.P.R. 1991), *aff'd per curiam*, 976 F.2d 724 (1st Cir. 1992).

This court has yet to decide whether nominal damages ever constitute an equitable remedy in the context of a statutory claim to vindicate civil rights. *See United States v. Marolf*, 173 F.3d 1213, 1219 n.5 (9th Cir. 1999) (concluding that deciding this question was unnecessary).[7]  Because this question now arises in the context of determining whether a case or controversy sufficient to confer Article III standing exists, we approach it "mindful that the 'Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)).

"Damages are commonly understood to compensate a party for loss or harm sustained." *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005), *amended by* 2005 WL 1154321.  But different categories of damages in fact serve distinct purposes. *See Campbell*, 538 U.S. at 416; *Cooper Indus*, 532 U.S. at 432; 1 Dan B. Dobbs, Law of Remedies § 1.1, 3–4 (2d ed. 1993). *Compare Philip Morris USA v. Williams*, 549 U.S. 346, 358–59, 127 S. Ct. 1057, 166 L. Ed. 2d 940 (2007) (Stevens, J., dissenting) (punitive and compensatory damages), *with Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986) (presumed damages), *and Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 55 L Ed. 2d 252 (1978) (nominal damages).  In determining whether nominal

---

[7] A claim for nominal damages that seeks to vindicate a constitutional right is not moot. *See Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 425–26 (9th Cir. 2008) (discussing *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)); *Marolf*, 173 F.3d at 1219 (same).

damages may ever be awarded in equity to vindicate statutory rights, we find it instructive to compare the purposes such damages serve with those served by the classic form of legal relief, compensatory damages. *See Hurley v. Atchison, T. & S.F. Ry. Co.*, 213 U.S. 126, 134, 29 S. Ct. 466, 53 L. Ed. 729 (1909) ("Equity looks at the substance, and not at the form."); *see also Mertens*, 508 U.S. at 255.

"Compensatory damages and nominal damages serve distinct purposes." *Schneider v. Cty. of San Diego*, 285 F.3d 784, 795 (9th Cir. 2002). The distinguishing feature of compensatory or actual damages is that they serve "to compensate for a proven injury or loss." *See* Damages, *Black's Law Dictionary* (10th ed. 2014). "Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'" *Campbell*, 538 U.S. at 416 (quoting *Cooper Indus.*, 532 U.S. at 432). "To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" *Stachura*, 477 U.S. at 307 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S. Ct. 2997, 3012, 41 L. Ed. 2d 789 (1974)). In light of their compensatory purpose, "compensatory damages are measured by the harm the defendant has caused the plaintiff." *Williams*, 549 U.S. at 358. As such, their proper measure is that which will "make good or replace the loss caused by the injury." *Berg v. First State Ins. Co.*, 915 F.2d 460, 465 (9th Cir. 1990). This is consistent with their purpose: "to return the plaintiff to the position he or she would have occupied had the harm not occurred." *Schneider*, 285 F.3d at 795 (citing 1 Dobbs, Law of Remedies § 1.1, at 3–5).

In contrast, nominal damages are divorced from any compensatory purpose. *See Carey*, 435 U.S. at 266; *Cummings*, 402 F.3d at 942–43. Instead, nominal damages, which are damages "in name only" and by nature minimal in amount, serve two distinct purposes. *Cummings*, 402 F.3d at 943. First, "[a]s distinguished from punitive and compensatory damages, nominal damages are awarded to vindicate rights, the infringement of which has not caused actual, provable injury." *Id.* at 942. Thus, "a plaintiff might seek vindication of a right which is not economic in character and for which no substantial non-pecuniary award is available." 1 Dobbs, Law of Remedies § 3.3(2), at 295–96. Second, "[n]ominal damages serve one other function, to clarify the identity of the prevailing party for the purposes of awarding attorney's fees and costs in appropriate cases." *Cummings*, 402 F.3d at 943. Particularly when a statute provides for the award of court costs to the prevailing party, a court may award nominal damages to avoid ordering the plaintiff to pay court costs and ensure the cost burden is on the defendant. 1 Dobbs, Law of Remedies § 3.3(2), at 296. In light of their symbolic nature, nominal damages are appropriately awarded even when an injury has been "fully compensated through a different cause of action." *Schneider*, 285 F.3d at 795 (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir. 1991); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 (9th Cir. 1999)).

The Supreme Court has never addressed whether the trifling and purely symbolic nature of nominal damages might constitute an attribute meriting an exception to the general rule that monetary awards are ordinarily awarded in law rather than equity, if only in the context of actions that seek to vindicate civil rights. Nor has this court. But this court previously recognized that in determining whether a

statute authorizes nominal damages awards, it is necessary to consider whether Congress intended to provide a statutory nominal damages remedy when it enacted the law. *See C.O. v. Portland Pub. Sch.*, 679 F.3d 1162, 1166–67 (9th Cir. 2012).

When Congress enacted § 12203, it incorporated by reference the preexisting Title VII enforcement provision codified in § 2000e-5(g)(1). Because Congress chose to legislate by incorporating this preexisting provision rather than writing on a blank slate, it is appropriate in this case to presume "that when Congress legislates, it is aware of past judicial interpretations." *Egebjerg v. Anderson (In re Egebjerg)*, 574 F.3d 1045, 1050 (9th Cir. 2009). Significantly, when Congress enacted the ADA, the vast majority of the courts of appeals to address the issue had concluded that § 2000e-5(g) authorizes nominal damages awards. *See Huddleston*, 845 F.2d at 905 (Eleventh Circuit); *Maney*, 802 F.2d at 1076 (Eighth Circuit); *Derr*, 796 F.2d at 344 (Tenth Circuit); *Katz*, 709 F.2d at 253 n.1 (Fourth Circuit); *Crenson*, 666 F.2d at 728 & n.8 (First Circuit); *see also Joshi*, 646 F.2d at 991 n.33 (Fifth Circuit Unit B). By that time, only the Seventh Circuit had held to the contrary, arriving at its conclusion by means of somewhat cursory analysis. *See Swanson*, 882 F.2d at 1240; *Bohen*, 799 F.2d at 1184.

More fundamentally, the language Congress employed in § 2000e-5(g)(1) is far more specific than the language of a mere grant of jurisdiction. *See C.O.*, 679 F.3d at 1167. On the contrary, § 2000e-5(g)(1) expressly grants courts discretion to award whatever equitable relief they deem appropriate. *See* § 2000e-5(g)(1) (authorizing a court who finds an employer engaged in an unlawful employment

practice to "enjoin the [employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate"). Plainly, to the extent nominal damages may constitute equitable relief, a court is authorized to award them under § 2000e-5(g)(1).

This court has previously indicated in dicta that nominal damages may be legal or equitable. *See Marolf*, 173 F.3d at 1219 n.5 ("Normally, nominal damages are a legal, not an equitable, remedy."). In doing so, we considered and rejected the position that nominal damages necessarily constitute a legal remedy rather than an equitable one, emphasizing our prior holding "that where a court of equity assumes jurisdiction over a matter because the parties request equitable relief, an award of damages is permissible if necessary to secure complete justice." *Id.* (quoting *United States v. Martinson*, 809 F.2d 1364, 1367–68 (9th Cir. 1987)) (citing *Griffith*, 17 F.3d at 1327; *Landgraf*, 968 F.2d at 431; *Swanson*, 882 F.2d at 1240).

"It is the historic purpose of equity to secure complete justice." *EEOC v. Gen. Tel. Co.*, 599 F.2d 322, 334 (9th Cir. 1979); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975). In the context of a claim brought under a federal statute intended to combat discrimination,[8] the phrase "complete justice" has a clear

---

[8] "When it enacted the ADA, Congress made specific factual findings of arbitrary and invidious discrimination against the disabled. On the basis of these findings, Congress concluded that the ADA was a necessary legislative response to a long history of arbitrary and irrational

meaning: "the [district] court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Moody*, 422 U.S. at 418 (quoting *Louisiana v. United States*, 380 U.S. 145, 154, 85 S. Ct. 817, 13 L. Ed. 2d 709 (1965)). To adopt a per se limitation on the equitable powers of district courts that would require them to deny a plaintiff relief from the invidious effects of discrimination based on the defendant's own unlawful conduct would be "manifestly inconsistent with the 'historic purpose of equity to secur[e] complete justice' and with the duty of courts . . . 'to render a decree which will so far as possible eliminate the discriminatory effects of the past.'" *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977) (quoting *Moody*, 422 U.S. at 418).

As this court has previously recognized,

> "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." "By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that

---

discrimination against people with disabilities." *Dare v. California*, 191 F.3d 1167, 1174 (9th Cir. 1999) (citation omitted) (first citing 42 U.S.C. § 12101(a)(7); then citing *id.* § 12101(b)).

> substantial damages should be awarded only
> to compensate actual injury . . . ."

*Bernhardt*, 279 F.3d at 872–73 (first quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986); then quoting *Carey*, 435 U.S. at 266).  Given the dignitary interest at stake when an action alleges a violation of a statute intended to safeguard civil rights, nominal damages seem particularly well suited to securing "complete justice" in this context.  In contrast, nominal damages fail in any meaningful way to serve the functions customarily served by legal relief, as the award of a trifling sum furthers neither the restorative function served by compensatory damages, nor the punitive functions served by civil penalties, punitive damages, and treble damages.  *See Stachura*, 477 U.S. at 306–07; *Tull v. United States*, 481 U.S. 412, 422, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987).

The unique circumstances of this case illustrate that complete justice may require a district court to award nominal damages as equitable relief.  Bayer waited more than six years after he filed the charge alleging Neiman Marcus interfered with his ADA rights to receive the right-to-sue letter he needed to initiate this suit from the EEOC, including four years *after* the EEOC determined there was reasonable cause to believe Neiman Marcus had discriminated against him in violation of the ADA.  Meanwhile, Neiman Marcus attempted to enforce against him the very arbitration agreement that was the subject of the reasonable cause determination in a separate suit concerning subsequent events.  In that suit, the district court ruled that the agreement did not bind Bayer, and we affirmed that ruling in his favor more than two years later based on the course of events that is indisputably at the heart of this suit.  *See generally Bayer*,

582 F. App'x 711. Thereafter, the district court ruled that this action was moot and ordered Bayer to pay Neiman Marcus's costs. There can be no question that complete justice required a different result, as dismissing an action in which an employee alleges an employer violated the ADA by imposing a mandatory arbitration agreement merely because he or she successfully resisted the employer's attempt to enforce that agreement could only compound whatever dignitary harm the employee suffered due to the employer's alleged unlawful conduct. For this court to adopt a per se limitation on the equitable powers granted to district courts by the ADA under these circumstances would be manifestly inconsistent with the historic purpose of equity to secure complete justice. *See Teamsters*, 431 U.S. at 367. We therefore conclude § 12203 authorizes courts to award nominal damages as equitable relief when complete justice requires.

## Conclusion

For the foregoing reasons, we conclude § 12203 authorized the district court to award nominal damages as equitable relief to Bayer. We therefore reverse the district court order finding this action moot and granting summary judgment to Neiman Marcus and remand for further proceedings.

**REVERSED AND REMANDED.**